John H. STEIN *v.* Bob LUKAS and Buck Stove of
Arkansas, Incorporated

91-27 823 S.W.2d 832

Supreme Court of Arkansas
Opinion delivered January 21, 1992

*T.B. Patterson, Jr.*, for appellant.

*Anderson & Kilpatrick*, by: *Michael E. Aud*, for appellees.

ROBERT L. BROWN, Justice. This appeal arises from a jury verdict in favor of the appellant, John H. Stein, in the amount of $5,700. That amount represented damages to the appellant resulting from a flue fire caused by a wood-burning stove. The core of the appellant's appeal is the circuit court's refusal to submit the issue of punitive damages to the jury. The appellant asserts that this was error. The appellees, Bob Lukas and Buck Stove of Arkansas, Incorporated, cross-appeal on the basis that the circuit court impermissibly allowed evidence of the appellees' financial worth to be presented to the jury, since punitive damages were not at issue. The appellees further assert that the circuit court erred in taking judicial notice of the Southern Building Code.

The appellant began shopping for a wood-burning stove in November 1984 and ultimately decided to purchase a stove that same month after discussions with appellee Bob Lukas, an agent of appellee Buck Stove of Arkansas. The stove purchased was a Little Buck Stove, model 26000, to be installed in his zero-clearance metal fireplace. The appellant alleged that Lukas made assurances that the stove was suitable for his fireplace.

In March 1986 the appellant had a flue fire which caused him to read the Buck Stove owner's manual. He discovered then that the manual prohibited installation of model 26000 in metal fireplaces. He filed a complaint against the appellees on November 5, 1987, alleging deceit and breach of express and implied warranties. At the first trial (*Stein I*), the circuit court directed a verdict in favor of the appellees at the conclusion of the appellant's case. On appeal, the Arkansas Court of Appeals in an unpublished opinion reversed and remanded for a new trial, after holding that sufficient factual issues involving liability and damage questions were presented in the case and necessitated jury resolution.[1]

---

[1] The issues presented in the appeal of *Stein I* either were not ripe for consideration by the Court of Appeals or the Court of Appeals refused to address them. Accordingly, the doctrine of Law of the Case does not apply.

At the second trial (*Stein II*), the appellant advanced both his deceit claim and his claims for breach of warranty. The appellant maintained that he had been assured by Lukas that the stove was suitable for his fireplace and that the National Fire Protection Association 211 standards, governing in part stove installations, were not of concern. Lukas testified that he told the appellant only that Arnold Greene Testing Laboratories had approved these stoves for metal fireplaces by letter dated June 28, 1983. The appellant asked for all monetary damages, including repair and replacement costs, which he said totalled $4,736.15. He also asked for punitive damages.

The circuit court instructed the jury on deceit and breach of warranty. Over the appellant's objection and at the appellees' urging, the court also instructed on negligence. It refused, however, to instruct on punitive damages or to allow the appellant to develop a punitive damages case at trial. It further refused an AMI (Civil) 903 instruction premised on criminal deceit as some evidence of negligence.

The case was not submitted on interrogatories, and no special verdict forms were submitted to the jury. The jury returned a verdict of $5,700, and judgment was entered according.

## I. Punitive Damages

For his first point, the appellant argues that there was error in the circuit court's refusal to submit the issue of punitive damages to the jury. We agree.

We have held that punitive or exemplary damages are proper where there is an intentional violation of another's right to his property. *See Walt Bennett Ford, Inc.* v. *Keck*, 298 Ark. 424, 768 S.W.2d 28 (1989). We have further held that punitive damages are available in cases of misrepresentation or deceit. *See Thomas Auto Co.* v. *Craft*, 297 Ark. 492, 763 S.W.2d 651 (1989).

In addition, we have said that an award of punitive damages is justified only where the evidence indicates that the defendant acted wantonly in causing the injury or with such a conscious indifference to the consequences that malice may be inferred. *See Missouri Pacific Railroad* v. *Mackey*, 297 Ark. 137, 760 S.W.2d

59 (1988); *National By-Products, Inc.* v. *Searcy House Moving Company, Inc.*, 292 Ark. 491, 731 S.W.2d 194 (1987). In both cases we quoted the following language from *St. Louis, I.M. & S. Ry. Co.* v. *Dysart*, 89 Ark. 261, 116 S.W.2d 224 (1909) with approval:

> In other words, in order to superadd this element of damages by way of punishment, it must appear that the negligent party knew, or had reason to believe, that his act of negligence was about to inflict injury, and that he continued in his course with a conscious indifference to the consequences, from which malice may be inferred.

*Mackey*, 297 Ark. at 145; 760 S.W.2d at 63; *National By-Products, Inc.*, 292 Ark. at 494; 731 S.W.2d at 196.

We have also defined circumstances from which malice can be inferred: "In other words, in order to warrant a submission of the question of punitive damages, there must be an element of willfulness or such reckless conduct on the part of the defendant as is equivalent thereto." *Dalrymple* v. *Fields*, 276 Ark. 185, 188, 633 S.W.2d 362, 364 (1982); *quoting Hodges* v. *Smith*, 175 Ark. 101, 293 S.W.2d 1023 (1927).

In 1987, we cited Arkansas Model Jury Instruction 2217 as an embodiment of the law on punitive damages. *See Dongary Holstein Leasing, Inc.* v. *Covington*, 293 Ark. 112, 732 S.W.2d 465 (1987). We quoted AMI 2217 in part as requiring a finding that the defendant "knew or ought to have known, in the light of the surrounding circumstances, that his conduct would naturally or probably result in injury and that he continued such conduct in the reckless disregard of the consequences from which malice can be inferred." *Id.* Hence, malice can be inferred either from a conscious indifference to the consequences of one's actions or from a reckless disregard of those same consequences.

■ Our analysis begins by determining the degree of evidence required for the jury to consider a punitive damage award. We have said that if there is *evidence* tending to show deliberate misrepresentation or deceit, that meets the plaintiff's burden. *See Ray Dodge, Inc.* v. *Moore*, 251 Ark. 1036, 479 S.W.2d 518 (1972). We have further said that the degree of proof required is *substantial evidence* of actual or inferred malice. *See*

*City Nat'l Bank* v. *Goodwin*, 301 Ark. 182, 783 S.W.2d 335 (1990); *Satterfield* v. *Rebsamen Ford, Inc.*, 253 Ark. 181, 485 S.W.2d 192 (1972). We believe that the better rule is to look for any substantial evidence to support a punitive damages instruction, and we hold that to be the standard.

By denying the submission of the punitive damage issue to the jury, the circuit court, in effect, directed a verdict in favor of the appellees on that issue. We look, therefore, to see whether any substantial evidence of record exists to warrant the jury's consideration of punitive damages. Here, we conclude that there is such evidence. First, the manufacturer's instructions specifically warned the appellees of the danger involved in installing wood burning stove in zero-clearance metal fireplaces. The appellee Lukas testified that he was aware of the instructions but chose to disregard them and did not tell his customers specifically about them, although he gave them an owner's manual which contained the warning about wood stoves in metal fireplaces after the stoves had been installed.

Secondly, there was testimony of record from the appellant's expert, Alan Molero, who had previously installed stoves for Lukas. Molero wrote Lukas in 1972 to warn him that installation of wood-burning stoves in metal fireplaces was unsafe. He refused to install them. Molero further testified that Lukas justified continued sales by saying he would "lose out on a good portion of the market" if he did not sell the stoves in conjunction with the metal fireplaces. Molero added that Lukas once offered him an economic incentive to install a stove in a metal fireplace which he considered unsafe. This evidence is sufficient to warrant jury consideration, and we so hold.

A related aspect of the punitive damage issue is whether the jury's verdict was one that could sustain damages which are designed to punish conduct. The jury was instructed on negligence, deceit, and breach of warranty. A verdict was returned, but it is impossible to know with certainty which of the three theories of relief the jury relied upon. If the jury's theory was breach of warranty, which sounds in contract, a question arises of whether punitive damages could have been appropriately considered by the jury in any event. We do not presume error, and if punitive damages were inappropriate for consideration due to a

contract verdict, that could end the matter. *See Northwestern Nat'l Life Ins. Co.* v. *Heslip*, 302 Ark. 310, 790 S.W.2d 152 (1990).

One commentator has discussed the issue in terms of whether punitive damages are compatible with products liability cases where typically the plaintiff sues for negligence, breach of warranty, and strict liability. *See* 1 Ghiardi and Kircher, *Punitive Damages, L & Prac* § 6.01 (1985). The discussion goes forward:

> It has been argued that actions based on strict liability or breach of warranty cannot support a punitive damage claim because they are faultless concepts and fault is a critical element of punitive damages.
>
> However, courts have refused to recognize the incompatability argument with regard to strict liability actions. Likewise, with warranty actions, courts have avoided the rule that punitive damages may not be awarded in contract actions by using established exceptions or simply by refusing to apply the rule when punitive damages appear appropriate. Usually, all three theories of liability or a combination thereof are pled in the alternative in a products case. Because of the prevalent use of the general verdict it is often difficult if not impossible to ascertain the basis for the punitive damages award.

*Id.*

In 1989, we reviewed a case involving a defective car where the jury was instructed in restitution due to revocation of acceptance under the Uniform Commercial Code and in tort for damages due to misrepresentation. *See Thomas Auto Co.* v. *Craft, supra*. Punitive damages were also requested. The jury found for the plaintiff, awarded damages on a special verdict form for revocation of acceptance and misrepresentation, and added punitive damages. The appellant argued that punitive damages were not allowable except in conjunction with compensatory tort damages and that a recovery for revocation of acceptance would not sustain them.

We stated in *Craft* that we saw no reason why punitive damages could not be recovered when the conduct that formed the basis for the revocation and restitution also constituted the

tort of deceit. We concluded that punitive damages were available to a claimant whose claim was based on rescission or revocation of acceptance that resulted in restitution and consequential damages.

Here, under the rationale of *Craft*, the appellant's claim for punitive damages should not be negated by the fact that the jury did not specify whether the underlying cause of action supporting the $5,700 award lay in tort or breach of warranty. The elements of deceit were proven in this case. Indeed, deceit was the primary thrust of the appellant's case and the principal theory that he advanced to the jury in closing argument.

We recognize in this case that, on the surface, the appellant appears to have foisted a limited appeal on this court by narrowing the scope of the appeal to the punitive damages issue. We have been constant in holding that a verdict is an entity which we cannot divide by affirming the finding of liability but remanding on the issue of damages. *See, e.g., McVay* v. *Cowger*, 276 Ark. 385, 635 S.W.2d 249 (1982). At oral argument, however, the appellant stated his preference for a remand on all issues rather than an affirmance of the existing judgment. The appellees, too, have cross-appealed for a new trial. All this being the case, we remand for a new trial on all issues, and we hold that under the proof submitted to the jury in *Stein* II it was error to omit the punitive damages instruction.

Since we are remanding for a new trial, we will answer the collateral points raised by both parties.

## II. Discovery

The appellant contests the circuit court's decision to deny discovery in certain areas relating to the appellees' business. We have long held that the court has wide discretion in matters pertaining to discovery and that we will not reverse a decision absent an abuse of discretion. *See Marrow* v. *State Farm Ins. Co.*, 264 Ark. 227, 570 S.W.2d 607 (1978). The appellant sought extensive sales data and customer lists together with gross income from Buck Stoves of Arkansas, dating back to 1982. The circuit court permitted discovery of customers who bought the Buck stoves for installation in metal fireplaces in 1984 which was the year of the sale to the appellant. There were some 54 in number.

The other requests for customer and sales data were denied on grounds of irrelevancy. What is relevant is soundly placed within the circuit court's discretion. We cannot say that limiting discovery to the year in question for purposes of punitive damages was an abuse of that discretion.

On a related discovery point, the appellant asserts error in the court's failure to allow discovery into the gross sales by Buck Stoves of Arkansas as opposed to net sales or income. Buck Stove provided its corporate tax returns from 1982 through 1988. This was sufficient evidence of Buck Stove's financial condition. There was no abuse of discretion.

### III. Instructions

The appellant objected to a negligence instruction on the basis that he viewed Lukas' conduct as intentional. The circuit court, nonetheless, gave this negligence instruction. The appellant then asked that the jury be instructed on criminal deceit under the Deceptive Trade Practices Act as some evidence of negligence under AMI (Civil) 903. *See* Ark. Stat. Ann. §§ 70-904, 70-907, now codified as Ark. Code Ann. §§ 4-88-103, 4-88-108 (1987). The court refused.

It seems largely inconsistent to request an instruction on criminal deceit, which is comparable to the conduct that constitutes civil deceit, as some evidence of negligent behavior. The jury was instructed to find the appellees' conduct to be either deceitful or negligent. We cannot say the court abused its discretion by refusing to instruct that criminal deceit is some evidence of negligence.

### IV. Interest and Attorneys Fees

This was essentially a deceit action sounding in tort. The appellant asked, in closing argument, for damages of $1,274.50 (the cost of the stove) and $3,211.65 (the repair cost for the fireplace) and additional damages for deceit. The jury awarded $5,700.00. The fact that the jury awarded an amount higher than the total of repair and replacement costs evidences are difficulty in awarding prejudgment interest in this case. Generally, prejudgment interest is not recoverable where damages are inexact and uncertain. *See City of Fayetteville* v.

*Stanberry*, 305 Ark. 210, 807 S.W.2d 26 (1991). The jury's verdict confirms the uncertainty which envelops the damage issue in this case.

 Nor did the circuit court err in refusing to award an attorney's fee. Arkansas' fee statute for civil actions does not embrace tort actions such as deceit. *See* Ark. Code Ann. § 16-22-308 (1987). In this case deceit lies at the heart of the claim leveled by the appellant against the appellees.

## V. Cross Appeal

 The appellees raised two arguments on cross appeal: 1) admission of financial condition in a non-punitive case, and 2) judicial notice of the Southern Building Code. The appellees are correct on point one. Admission of a defendant's financial condition into evidence when punitive damages are not at issue is ordinarily reversible error. *See Berkeley Pump Co.* v. *Reed-Joseph Land Co.*, 279 Ark. 384, 402, 653 S.W.2d 128, 138 (1983) (Supp. Opin.). Here, though, we have held that punitive damages should have been considered by the jury. Since this is the case, the financial condition argument is moot.

 The circuit court's taking judicial notice of the "Southern Building Code" may also be suspect, but we are at a loss to know precisely what code the appellees have reference to since it is not clearly identified for our review. Certainly, a circuit court is within its bounds in noticing a code of regulations duly promulgated under our Administrative Procedures Act. *See* Ark. R. Evid. 201(b). There is oblique testimony to the Code's inclusion in the State Fire Code, which was said at trial to be on file in the Secretary of State's office. That is not sufficient identification of the Southern Building Code for purposes of our consideration. We decline to reach this issue.

Reversed and remanded.