Randy **RENFRO**, Paul **Miller**, Rickey **Yandell**, Larry **White**, Colleen **Renfro**, Peggy **Miller**, Debbie **Yandell**, George **Cowger**, Maxine **Ray**, Appellees/Cross-appellants,

v.

**SWIFT ECKRICH, INC.,** Appellant/Cross-appellee.

Nos. 94–2872, 94–2973.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1995.

Decided April 28, 1995.

Rehearing and Suggestion for Rehearing En Banc Denied June 19, 1995.

---

5. Swift Eckrich's motion to strike portions of the record and the Jacksons' brief is granted.

Charles Harwell, Springdale, AR, argued (James E. Crouch, on the brief), for appellant.

James G. Lingle, Rogers, AR, argued, for appellee.

Before McMILLIAN, FAGG and WOLLMAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Swift Eckrich, Inc. ("Swift Eckrich"), appeals from a final judgment entered in the United States District Court[1] for the Eastern District of Arkansas upon a jury verdict finding it liable to a number of turkey growers for breach of contract, fraud, breach of the implied warranty of merchantability, and violations of the Packers & Stockyards Act (PSA), 7 U.S.C. §§ 181–228. For reversal, Swift Eckrich argues the district court erred in (1) holding that questions regarding violations of the PSA should not be referred to the Secretary of Agriculture under the doctrine of primary jurisdiction, (2) applying the four-year limitations period of the Sherman Act to the PSA claims, and (3) denying its motion for judgment as a matter of law on the fraud, contract, and warranty claims. On cross-appeal, the turkey growers argue that the district court erred in (1) failing to submit the issue of punitive damages to the jury and (2) granting judgment as a matter of law to Swift–Eckrich on usury claims. For the reasons discussed below, we affirm in part and reverse in part and remand the case to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

This case involves four poultry farms that agreed individually with Swift Eckrich to five, consecutive, one-year contracts to grow turkeys for processing at Swift Eckrich's processing plant in Huntsville, Arkansas. On this day, we have simultaneously filed an opinion in a case involving similar facts and legal issues. *See Jackson v. Swift Eckrich,* 53 F.3d 1452 (8th Cir.1995) (*Jackson* ). The farms in the present case were the Rocky Point Farm, the Miller Farm, the Yandell Farm, and the C & W Farm (collectively, "plaintiffs").

Under the contracts, plaintiffs would buy young turkeys, poults, from Swift Eckrich, raise them, and sell them back to Swift Eckrich about eighteen weeks later when the turkeys reached a marketable size. Both the sale and re-purchase were provided for in the same contract. Further, the contracts contained detailed terms regarding the manner in which the growers were to care for the turkeys and run their growing operations. There were, however, two versions of the poultry growing contracts.

At their initial signings, plaintiffs had a choice of a floor contract or a performance contract. The performance contract reimbursed the grower for costs, plus so much based on performance as measured by contract standards. Thus, if a grower could not control costs, Swift Eckrich had to bear the increase. Under the floor contract, a grower had to pay his own costs. Reimbursement was based on market movements, and if the grain and turkey markets moved in the right directions, the grower could make more money under the floor contract. This contract, however, exposed the grower to more risk.

The Renfros, co-owners of Rocky Point Farm, chose to take the floor contract over the performance contract at their initial signing. They claim, however, they were promised at the outset the flexibility to choose each year the type of contract they wanted. They also assert that Swift Eckrich denied their requests for performance contracts in 1988 and 1990. The other growers chose the performance contract. All plaintiffs claim they were promised a five-year contract. Swift Eckrich argues that on its face, each contract demonstrated it had a one-year time limit. Because of the cost-plus nature of the

---

1. The Honorable Henry Woods, District Judge, United States District Court for the Eastern District of Arkansas.

performance contract, Swift Eckrich claims that there came a point when it could only afford to offer performance contracts to producer-growers, i.e. those growers with their own feed mills. Plaintiffs in this case did not have feed mills, and according to Swift Eckrich, could not control costs. Plaintiffs were thus eventually restricted to floor contracts. For the 1991 growing year, plaintiffs were offered floor contracts only, which they signed. Swift Eckrich again offered one-year floor contracts to plaintiffs for the 1992 growing year, but they declined to sign because they were not given the option to choose a performance contract. Plaintiffs argued to the district court that Swift Eckrich's failure to give them a choice of contracts constituted a violation of the PSA's prohibition against unfair and unjustly discriminatory treatment. *See* 7 U.S.C. § 192.

Plaintiffs also alleged that Swift Eckrich often sold them diseased poults which were below merchantable quality. They further asserted that Swift Eckrich engaged in a number of practices from the point it retrieved the turkeys until the point of processing which caused them to receive less money than they deserved. They complained of many of the same mishandling practices raised in the *Jackson* case. For example, plaintiffs alleged that Swift Eckrich's "catch and haul" crews were very rough with the birds, and that this mistreatment resulted in dead-on-arrival birds (DOAs) and bird downgrades at the plant, which were charged against the growers. They also maintained that Swift Eckrich used an average live weight calculation to deduct for condemned carcasses, even though condemned birds were typically smaller than acceptable birds, and that Swift Eckrich intentionally failed to weigh live birds according to federal regulations. According to plaintiffs, Swift Eckrich's practice was to schedule the turkeys to arrive at the plant early in the morning and then allow them to sit and shrink for hours before weighing them.

The jury found Swift Eckrich liable for PSA violations, breach of contract, fraud, and breach of the implied warranty of merchantability, and awarded general damages in the amount of $392,241.00. Swift Eckrich then moved for judgment as a matter of law, arguing, among other things, that primary jurisdiction should have kept the alleged PSA violations from the jury, that the two-year statute of limitations of the Agricultural Fair Practices Act (AFPA) should have applied to the alleged PSA violations, and that plaintiffs had waived their rights to sue for breach of contract, fraud, and breach of implied warranty. The district court denied this motion. Swift Eckrich now appeals. On cross-appeal, plaintiffs argue the district court erred in failing to submit the issue of punitive damages to the jury in connection with their fraud claims and in denying the usury claims made by the Renfros and the Yandells.

## II. DISCUSSION

### A.

In *Jackson*, we fully address the question whether the doctrine of primary jurisdiction applies to claims against live poultry dealers for unfair and unjustly discriminatory practices which violate § 202 of the PSA, 7 U.S.C. § 192. See 53 F.3d at 1455–58. In *Jackson*, we held that the doctrine of primary jurisdiction does not apply in such instances. We also held that the district court did not err in applying the four-year statute of limitations of the Sherman Act, 15 U.S.C. § 15(b), instead of the two-year statute of limitations of the Agricultural Fair Practices Act, 7 U.S.C. § 2305(c). *Id.* at 1460. Because both of these issues present questions of law, we need not repeat our analysis here. Therefore, for the reasons stated in *Jackson*, we hold that the district court in the present case did not err in refusing to apply the doctrine of primary jurisdiction to the claimed PSA violations and in applying the four-year statute of limitations period of the Sherman Act.

### B.

Swift Eckrich argues that, for a number of reasons, it was entitled to judgment as a matter of law on the plaintiffs' claims of breach of contract. It contends that the contracts were modified by the conduct of the parties, that plaintiffs' claims were barred in part by either a three-year or four-year statute of limitations, or barred by waiv-

er, and that the jury was improperly allowed to award overlapping damages for the PSA violations and contract claims.

With regard to the modification argument, the overlapping damages argument, and the statute of limitations argument, we note that Swift Eckrich either did not raise them during the trial or failed to preserve them for appellate review. Swift Eckrich never requested a jury instruction on the modification issue and never objected to the absence of such instruction. It also failed to object to the damages instruction or purpose an alternative instruction. Swift Eckrich first raised the modification argument in its post-trial motion for judgment as a matter of law. In that motion, Swift Eckrich argued that a three-year statute of limitations should apply to the contract claims because the conduct of the parties converted the contracts into oral agreements. On this appeal, Swift Eckrich repeats this argument and adds the alternative argument that the contracts were for the sale of goods and thus the four-year statute of limitations of the Uniform Commercial Code (UCC) should have applied in the event the contracts were not modified by conduct.[2] Swift Eckrich also makes the overlapping damages argument for the first time on this appeal.

■ Ordinarily, this court will not consider issues first raised on appeal. *Daisy Mfg. v. NCR Corp.*, 29 F.3d 389, 395 (8th Cir.1994). In the present case, there are no exceptional circumstances that might warrant deviation from this rule. Therefore, we will not consider the issues of overlapping damages and the four-year statute of limitations.[3] Further, Rule 51 of the Federal Rules of Civil Procedure provides that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider the verdict, stating distinctly the matter objected to and the grounds of the objection." If Swift Eckrich believed that the parties had modified the contracts by conduct, it should have requested a jury in-

struction on this fact question. By failing to do so, Swift Eckrich has not preserved the issue for appellate review. This failure is also fatal to Swift Eckrich's argument that the contracts, as modified, became oral agreements subject to a three-year statute of limitations.

■ Swift Eckrich argues that it was entitled to judgment as a matter of law on the contract claims because plaintiffs, by accepting nonconforming performance, waived their rights to claim breach and sue for damages. The jury in the present case was given a standard waiver instruction, and found that plaintiffs had not waived their rights to sue for breach of contract. Whether a party has waived its rights under a contract presents a question of fact. *See Ward v. Russell*, 32 Ark.App. 86, 796 S.W.2d 588, 589 (1990). We can therefore reverse only if the evidence was insufficient as a matter of law. Swift Eckrich presented this argument to the district court, which did not find it worthy of discussion. We have carefully reviewed the record and hold that there was sufficient evidence from which a reasonable trier of fact could conclude that plaintiffs had not waived their rights to sue for breach. Plaintiffs introduced evidence to show that, at the time of contract performance, they were unaware of many of Swift Eckrich's mishandling practices which they now claim breached the contracts. Swift Eckrich's evidence to the contrary failed to establish, as a matter of law, that plaintiffs had knowingly abandoned their contract rights. *See Frawley v. Smith*, 3 Ark.App. 74, 622 S.W.2d 194, 197 (1981). Thus, we will not upset the jury's determination.

C.

■ Swift Eckrich next argues that the evidence was insufficient to support the jury verdict on the issue of fraud and that plaintiffs have waived their right to assert fraud. The fraud claims presented at trial were that Swift Eckrich committed fraud in calculating plaintiffs' payments and in representing their

---

**2.** The district court applied a five-year statute of limitations to the breach of contract claims.

**3.** Because we decline to consider the four-year statute of limitations argument, we reserve for another day the question whether the contracts at issue are for the sale of goods or for services.

calculations on the settlement sheets, the forms given to the growers which indicated the turkey weights and amounts of payment, to be true and accurate. Because plaintiffs introduced testimony which indicated that the measurements recorded on the sheets were inaccurate, and in some instances falsified, we hold that the district court did not err in refusing to grant judgment as a matter of law on the fraud claims. With regard to waiver, we note, as stated above, that an effective waiver must be knowing and voluntary. Because the evidence at trial did not indicate the plaintiffs had prior knowledge of the manner in which the weight calculations were manipulated or falsely recorded, we cannot conclude as a matter of law that they have waived their right to assert fraud.

### D.

Lastly, Swift Eckrich raises a number of arguments that it should prevail as a matter of law on plaintiffs' claims of breach of the implied warranty of merchantability. These claims are based on plaintiffs' allegations that Swift Eckrich sold them diseased poults. The only issue, however, that Swift Eckrich has properly preserved for appeal is whether plaintiffs have waived their right to assert this claim. As noted above, waiver by conduct is generally a jury question. The jury was instructed on waiver and found that none had occurred. Swift Eckrich again has merely invited this court to re-weigh the evidence. There was evidence at trial that plaintiffs complained repeatedly about poult quality, that Swift Eckrich knew that its flocks were infected with mycoplasma meleagridis (MM), and that Swift Eckrich improperly vaccinated its poults. Because our review of the record indicates that reasonable triers of fact could differ on the issue of waiver as it relates to the warranty claim, we hold that the district court did not err in denying Swift Eckrich's motion for judgment as a matter of law on that claim.

### E.

On cross-appeal, plaintiffs argue that the district court erred in refusing to instruct the jury on punitive damages in connection with their fraud claims. They contend that the sole and certain consequence of Swift Eckrich's practice of manipulating the turkey-weighing process by inflating weight deductions and allowing shrinkage was a reduction in the compensation paid to the growers. They further contend that every settlement sheet issued by Swift Eckrich was permeated with fraud and thereby deprived them of a true accounting and the corresponding proper payment. Swift Eckrich responds that, at most, this is a garden-variety deceit case, and that, under Arkansas law, the bare assertion of fraud is not enough to warrant recovery of punitive damages. Swift Eckrich thus maintains that the plaintiffs failed to prove the requisite malice or intent necessary to recover punitive damages.

In Arkansas, punitive damages are proper where there is an intentional violation of another's right to his or her property. *Stein v. Lukas,* 308 Ark. 74, 823 S.W.2d 832, 834 (1992) (*Stein*). Such damages are available in cases of misrepresentation or deceit. *Ciba–Geigy Corp. v. Alter,* 309 Ark. 426, 834 S.W.2d 136, 148 (1992). However, "an award of punitive damages is justified only where the evidence indicates that the defendant acted wantonly in causing the injury or with such a conscious indifference to the consequences that malice may be inferred." *Stein,* 823 S.W.2d at 834. Malice can be inferred either from a conscious indifference to the consequences of one's actions or from a reckless disregard of those same consequences. *Id.* There must be substantial evidence of actual or inferred malice to support a punitive damages instruction. *Id.*

We hold that the evidence in the present case was sufficient to support a punitive damages instruction. The evidence at trial demonstrated that Swift Eckrich paid little attention to the need for accuracy in its turkey-weighing procedures. Among other things, it failed to properly maintain tare weight tickets,[4] knowingly miscalculated deductions for condemned carcasses and parts, and in a few instances simply estimated condemnation

---

4. The tare weight is the weight of the truck in which the turkeys are weighed. The tare weight is deducted from the gross weight in order to determine the net weight of the birds.

deductions without even weighing the condemned birds. Because such practices could not possibly yield accurate measurements, the settlement sheets which Swift Eckrich provided to the growers must have been fraught with errors. Even if we assume that Swift Eckrich did not employ such shoddy procedures with the aim of reducing grower payments, its reckless disregard for the importance of obtaining true and accurate measurements is the kind of misconduct for which punitive damages may be appropriate. Therefore, we hold that the district court erred in failing to submit the issue of punitive damages to the jury.

### F.

The Renfros and Yandells also argue that the district court erred in granting judgment as a matter of law to Swift Eckrich on their usury claims. These claims arose from the fact that Swift Eckrich often financed the growers' poult purchases. This financing was not provided for in the contracts, but was arranged orally. The Arkansas Constitution provides that "[t]he maximum lawful rate of interest on any contract entered into ... shall not exceed five percent (5%) per annum above the Federal Reserve Discount Rate at the time of the contract." ARK. CONST. art. 19, § 13. The Renfros and the Yandells allege that in December 1990, the Federal Reserve rate dropped to 6.5%, thereby making unlawful the 12% interest the growers claim Swift Eckrich charged them for the financing of their poults.

For an agreement to be usurious, it must be so at the time it was entered into. *Smith v. MRCC Partnership*, 302 Ark. 547, 792 S.W.2d 301, 305 (1990). The party asserting usury has the burden of proof, and the claim must be sustained by clear and convincing evidence. *Id.* The district court ruled that the evidence submitted on these usury claims was insufficient as a matter of law. We agree. Plaintiffs failed to submit evidence establishing when the agreements were entered into, the agreed upon rate of interest, and the lawful maximum rate of interest at the time of the agreement. Be-

cause the usury provision of the Arkansas Constitution measures legality of the interest rate as of the time of contract formation, the mere fact that plaintiffs may have been paying 12% interest at a time when the lawful maximum rate of interest for new agreements was 11.5% does not make out a usury claim. Thus, plaintiffs failed to sustain their burden. We hold therefore that the district court did not err in granting judgment as a matter of law to Swift Eckrich on the claims of usury.

### III. CONCLUSION

The parties have raised a number of other issues, none of which merit discussion.[5] For the reasons stated above, the judgment of the district court is affirmed in part and reversed in part and the case is remanded to the district court for further proceedings consistent with this opinion.

---

5.  Plaintiff–Appellees' motion to supplement the    record is denied.