# United States Court of Appeals

## For the Eighth Circuit

_____

No. 22-1469

_____

Christine Turner, Special Administrator of the Estate of Linda Warner, Deceased
other Linda Warner

*Plaintiff - Appellee*

v.

Faulkner County, Arkansas; Chris Riedmueller; Tim Ryals; Bobbie Spivey; Anita
Wright; Michelle Maher; Teresa Coleman; Maria Hill; Taylor Haney; Eric
Whitcomb; Marissa Parks; Katie Martin; Anna Pope; Christopher Lisembey-Hall;
Thaf Kilpatrick; Tyroneisha Collins; Malik Clemons; Calene Scott; Taneisha
Jernigan; Leanne Dixon

*Defendant*s

Garry Stewart, M.D.

*Defendant - Appellant*

Karen Grant, L.P.N.; Monte Munyan, L.P.N.; Does, 1-10; Karen Munyan, In her
capacity as special administrator of the estate of Monte Munyan, Deceased other
Monte Munyan

*Defendant*s

_____

No. 22-1492

_____

Christine Turner, Special Administrator of the Estate of Linda Warner, Deceased other Linda Warner

*Plaintiff - Appellant*

v.

Faulkner County, Arkansas; Chris Riedmueller; Tim Ryals; Bobbie Spivey; Anita Wright; Michelle Maher; Teresa Coleman; Maria Hill; Taylor Haney; Eric Whitcomb; Marissa Parks; Katie Martin; Anna Pope; Christopher Lisembey-Hall; Thaf Kilpatrick; Tyroneisha Collins; Malik Clemons; Calene Scott; Taneisha Jernigan; Leanne Dixon

*Defendant*s

Garry Stewart, M.D.

*Defendant - Appellee*

Karen Grant, L.P.N.; Monte Munyan, L.P.N.; Does, 1-10; Karen Munyan, In her capacity as special administrator of the estate of Monte Munyan, Deceased other Monte Munyan

*Defendant*s

_____

Appeals from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: April 12, 2023
Filed: August 24, 2023
[Published]

_____

Before COLLOTON, WOLLMAN, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

Linda Warner's appendix ruptured during her incarceration, and she subsequently died from sepsis. Christine Turner, as special administrator of Warner's estate, filed suit against the county in which Warner was incarcerated, as well as against the individuals involved in her incarceration and medical care, alleging civil rights claims under 42 U.S.C. § 1983 and tort claims under state law. The medical malpractice claim against the jail physician, Dr. Garry Stewart, went to trial. All other claims were settled for $500,000. Stewart moved for judgment as a matter of law at the close of Turner's evidence. The district court[1] granted the motion, in part, concluding that Turner had not submitted evidence sufficient to support punitive damages. The jury returned a verdict for Turner and awarded $1.3 million in damages. The district court granted Stewart a credit against the verdict for the value of the settlement, amending the judgment to $800,000.

Stewart appeals the denial of judgment as a matter of law on the medical malpractice claim. Turner appeals the grant of judgment as a matter of law on the punitive damages claim, as well as the grant of credit against the verdict. We affirm.

## Medical Malpractice

We review *de novo* the district court's denial of a motion for judgment as a matter of law. Ryan Data Exch., Ltd. v. Graco, Inc., 913 F.3d 726, 732 (8th Cir. 2019). The court may grant judgment as a matter of law when a party, after being fully heard, has failed to establish a "legally sufficient evidentiary basis" for her claim. Fed. R. Civ. P. 50(a)(1). Such motion "may be made at any time before the

---

[1]The Honorable D.P. Marshall, Jr., United States District Judge for the Eastern District of Arkansas.

case is submitted to the jury." Fed. R. Civ. P. 50(a)(2). If the court does not grant the motion at that time, the movant may file a renewed motion for judgment as a matter of law after the entry of judgment. Fed. R. Civ. P. 50(b).

Stewart moved for judgment as a matter of law at the close of Turner's case-in-chief and again at the close of all the evidence. He argued, as relevant here, that Turner's expert witness had not established the applicable standard of care in the locality at issue, as required by Arkansas' so-called "locality rule." See Ark. Code Ann. § 16-114-206(a)(1) (requiring the plaintiff to prove "the degree of skill and learning ordinarily possessed and used by members of the profession of the medical care provider in good standing, engaged in the same type of practice or specialty in the locality in which he or she practices or in a similar locality"). The district court denied the motions, and Stewart did not renew his motion under Rule 50(b) after judgment was entered.

Turner argues that we have no basis to review the motion for judgment as a matter of law because Stewart did not renew it after judgment was entered against him. See Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 407 (2006) (holding that "since respondent failed to renew its preverdict motion as specified in Rule 50(b), there was no basis for review of respondent's sufficiency of the evidence challenge in the Court of Appeals"). Stewart contends that he was not required to renew his motion because it raised a question of law for the court to decide—*i.e.*, whether Turner's expert established the standard of care in the locality in which the care was provided. We do not address this argument because we conclude that Stewart has, in effect, challenged the sufficiency of the evidence to support the standard-of-care element of Turner's medical malpractice claim. He thus was required to renew his motion to preserve the issue for appeal.

Under Arkansas law, the local standard of care is an element of a medical malpractice claim. See Gambill v. Stroud, 531 S.W.2d 945, 949 (Ark. 1976) ("The

opportunities available to practitioners in a community are certainly matters of fact and not law and may be shown by evidence under our own locality rule.")  The Arkansas Model Jury Instructions thus require the jury to "determin[e] the degree of skill and learning the law required."  AMI 1501.  A malpractice-claim plaintiff must establish that a physician failed to apply with reasonable care the degree of skill and learning ordinarily used by physicians in the same or similar locality.  The district court gave the model instructions in this case, which are presumed to be correct. Thomas v. State, 257 S.W.3d 92, 103 (Ark. 2007).  Whether Turner's expert's testimony satisfied the locality rule thus was a question of fact that was submitted to the jury, which necessarily found by its verdict that the rule had been satisfied.

Stewart misreads Williamson to mean that satisfaction of the locality rule is a "pure question of law" that is considered only by a judge.  Williamson ruled only that failure to prove the local standard of care is not an objection that must be raised during the testimony of an expert witness.  72 S.W.3d at 492.  Rather, the issue may be raised in a motion for directed verdict.  *Id.*  As the Arkansas Court of Appeals later explained, the establishment of the local standard of care is not a matter of "foundation" (*i.e.*, not an evidentiary-type objection), but rather "an issue going to sufficiency of the evidence" that may be raised in a motion for directed verdict. Heritage Physician Grp., P.A. v. Minton, 432 S.W.3d 682, 686 (Ark. Ct. App. 2014). Consistent with Heritage, Stewart did not argue that the expert's testimony was inadmissible; he raised only a sufficiency argument.  See Appellant's Br. 13 ("Dr. Stewart did not move to disqualify Dr. Fowlkes as unqualified under the Federal Rules of Evidence.  He moved for directed verdict because Turner failed to meet her burden of proof.").  His argument thus required a renewed motion for judgment as a matter of law to be preserved for appeal.  Because Stewart did not renew his motion, he did not preserve his challenge to the sufficiency of the evidence and thus we do not reach the merits of his appeal.

Punitive Damages

Turner argues that she was entitled to have the jury decide whether to award punitive damages. The punitive damages question must be submitted to the jury if there is "substantial evidence to support a punitive damages instruction." Stein v. Lukas, 823 S.W.2d 832, 834 (Ark. 1992); Lockley v. Deere & Co., 933 F.2d 1378, 1389 (8th Cir. 1991) (looking to state law for standard). Substantial evidence is that which is "of sufficient force and character to compel a conclusion one way or the other with reasonable certainty." D'Arbonne Constr. Co. v. Foster, 123 S.W.3d 894, 897 (Ark. 2003). A jury may award punitive damages when the plaintiff has shown that the "defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred." Ark. Code Ann. § 16-55-206(1).

Turner argues that the evidence supports the instruction because it creates an inference that Stewart knew that Warner had a serious medical problem but did not treat her. Warner was in fact offered treatment for her known medical needs, including her diabetes, incontinence, and rash. Stewart did not examine her when she came for an appointment because he considered her uncooperative, but he prescribed Prozac to address her behavior and followed up with her family doctor to discuss it. Warner did not complain of abdominal pain, and Stewart did not know of her appendicitis. The evidence thus does not "compel a conclusion . . . with reasonable certainty" that Stewart acted with malice or reckless disregard of the consequences of his conduct such that malice could be inferred. See D'Arbonne Constr. Co., 123 S.W.3d at 897.

Turner argues in the alternative that the district court erred in limiting the testimony of her expert witness, Dr. Thomas Fowlkes. After Fowlkes described

Stewart's conduct as "reckless," the court instructed him not to use legal terms, though it did not strike the testimony. We find no abuse of discretion in the district court's limitation of the expert's testimony. Jacobson Warehouse Co., Inc. v. Schnuck Mkts., Inc., 13 F.4th 659, 675 (8th Cir. 2021) (standard of review). Although Fowlkes was not permitted to express his opinion in legal terms such as "reckless" or "negligent," he nevertheless offered ample testimony regarding Stewart's conduct and any deviations from the standard of care. We do not believe that the court's decision to preclude the use of legal terms like "reckless" would have had any bearing on its decision to grant judgment as a matter of law on punitive damages.

Credit Against the Verdict

Turner appeals the district court's decision to give Stewart a credit against the verdict for the amount of settlement, arguing that Stewart and the settled parties were not joint tortfeasors and so Arkansas's Uniform Contribution Among Tortfeasors Act (UCATA) does not apply. UCATA requires the court to reduce the damages recoverable against a defendant when the plaintiff releases a joint tortfeasor. Ark. Code Ann. § 16-61-204(c). Joint tortfeasors are those "who may have joint liability or several liability in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." Id. § 16-61-201(1). We review *de novo* the district court's application of state law. Cnty. of Ramsey v. MERSCORP Holdings, Inc., 776 F.3d 947, 950 (8th Cir. 2014).

Turner's complaint alleged claims against Faulkner County, the Faulkner County Sheriff, officers at the Faulkner County Detention Center (FCDC), and medical staff at FCDC (collectively, the Faulkner County Defendants), as well as Stewart, the FCDC's contract physician. The complaint included § 1983 claims against all defendants for deliberate indifference to serious medical needs, cruel and unusual punishment, and equal protection violations; a negligence claim against all

defendants; and a medical malpractice claim against medical staff and Stewart. Turner's complaint alleged that each of these claims resulted in Warner's pain, suffering, and death; she also alleged that the medical malpractice and negligence claims resulted in bodily harm. Turner and the parties reached a settlement agreement resolving all claims except the medical malpractice claim against Stewart.

Turner argues that Stewart and the Faulkner County Defendants were not joint tortfeasors because they were not liable for the same injury. With respect to the § 1983 claims, she argues that the constitutional violations occurred at a different time and independently of Stewart's medical malpractice. Timing is not dispositive of the joint tortfeasor question, however. In Applegate v. Riggall, a patient sued her physician for medical malpractice after he allegedly damaged her ureter during surgery, requiring her to undergo a second surgery for the removal of her kidney. 318 S.W.2d 596, 597 (Ark. 1958). The physician filed a third party complaint against the physician who removed the kidney, arguing that the second physician's negligent diagnosis and recommendations led to the unnecessary removal of the kidney and the related harms. Id. at 598. The Supreme Court of Arkansas wrote,

> The sole question to be determined is simply whether [the second physician] is a proper party defendant in this action. [He] argues that the two doctors cannot be held to be joint tortfeasors, because any alleged injuries received from either by plaintiff were separate and distinct injuries; that under the law, tortfeasors, acting independently, are jointly liable to a plaintiff, and liable to each other in contribution, *only* when the independent acts of each, cause or contribute to the *same* injury obtained by a plaintiff. We consider the latter assertion to be a correct statement of the law, but even so, we do not agree that [the first physician] is precluded from filing his third party complaint. While it is true that a part of plaintiff's complaint deals with alleged injuries occurring before [the second physician] entered the picture, nonetheless, it is apparent from reading the portions of the complaint heretofore quoted, that a substantial part of the damage complained of was allegedly caused by the loss of the kidney. In other words, the suit is

-8-

based upon *all* the injuries received by plaintiff, and suffering occasioned thereby.

Id.[2]

Applying <u>Applegate</u> here, we conclude that Stewart and the Faulkner County Defendants caused the same injuries. Like the plaintiff in <u>Applegate</u>, Turner's original suit against the Faulkner County Defendants was based on all of her injuries, a substantial part of which were allegedly caused by Stewart. Even if some of her injuries occurred prior to or independently of Stewart's conduct, Arkansas law does not preclude the Faulkner County Defendants from being joint tortfeasors. We conclude that Stewart and the Faulkner County Defendants were liable for the same injuries and were thus joint tortfeasors with regard to the § 1983 claims.

Moreover, it matters not that separate wrongdoings caused Warner's injuries—that is, that the § 1983 claims arose from constitutional violations and the medical malpractice claims arose from negligence. UCATA does not focus on the cause of the injury or the policy reason for imposing liability. It focuses on the injury, which Turner has alleged is the same for the § 1983 claims as it is for the medical malpractice claim.

Finally, Turner argues that because the Faulkner County Defendants were not liable for the negligence and medical malpractice claims, they could not be joint tortfeasors with Stewart. <u>See</u> <u>Indus. Iron Works, Inc. v. Hodge</u>, 595 S.W.3d 9, 12 (Ark. Ct. App. 2020) (A nonparty that is statutorily immune from liability in tort "cannot have joint or several 'liability' in tort and therefore does not meet the definition of 'joint tortfeasor' in the UCATA."). Arkansas counties are statutorily "immune from liability and from suit for damages except to the extent that they may

---

[2]Although post-<u>Applegate</u> the statutory definition of "joint tortfeasor" has been amended and recodified, the definition does not differ in any way material to this case.

be covered by liability insurance." Ark. Code Ann. § 21-9-301(a). Before settling with Turner, the Faulkner County Defendants asserted this immunity as an affirmative defense, but the issue was never litigated and decided.

We decline to decide whether the defendants would have succeeded in their affirmative defense had they not settled. Turner asserted that the parties were liable when she brought her claims. Because the claims raised the same injuries as were alleged to have been caused by Stewart, the parties were joint tortfeasors. We conclude that the district court did not err in granting Stewart a credit against the verdict for the settlement.

The judgment is affirmed.

_____