NATIONAL BY-PRODUCTS, INC. *v.* SEARCY HOUSE MOVING COMPANY, INC.

86-300                                                     731 S.W.2d 194

Supreme Court of Arkansas
Opinion delivered June 22, 1987
[Rehearing denied July 20, 1987.]

492

*Friday, Eldredge & Clark*, by: *James M. Simpson*, for appellant.

*Matthews & Sanders*, by: *Gail O. Matthews* and *Marci L. Talbot*, for appellee.

ROBERT H. DUDLEY, Justice. The sole issue in this tort case is whether an award of punitive damages should be upheld. We hold there was no substantial evidence to support the award of punitive damages, and reverse the judgment.

On July 11, 1985, Robert Foley was driving a large tractor-trailer for appellant National By-Products, Inc. from Batesville south on Highway 167. At the same time, appellee Searcy House Moving Company was moving a house north on the same highway. Appellee could not get the house through a bridge which was just north of Bald Knob, and, while the house was being adjusted on the house moving trailer, traffic was stopped and flagged around in the one lane of traffic still open. Stacy McGee and Lorene Staggs were slowly starting to go through the open lane when appellant Foley, speeding in an over-weight truck smashed into the rear of their car, knocking it eighty feet forward, causing it to hit the house and trailer, and then to hit two bystanders. Appellant National's truck also struck the house and

then crashed into another tractor-trailer rig. Lorene Staggs died instantly and Stacy McGee died seven hours later. The estates of Lorene Staggs and Stacy McGee filed wrongful death actions against Foley and appellant National By-Products, Inc. and appellee moving company. Defendants Foley and National By-Products and defendant moving company filed cross-complaints against each other, each asking compensatory and punitive damages from the other. The cases were tried before a jury which returned compensatory damage awards of $3,000,000 to the estate of Stacy McGee, $1,400,000 to the estate of Lorene Staggs, and $15,000 to appellee moving company. In addition, separate punitive damage awards of $100,000 were given to each estate and to appellee moving company. The judgments in the wrongful death cases were satisfied and appellee moving company agreed to a remittitur of its compensatory damage award from $15,000 to $1,883.14, the stipulated amount of compensatory damages. Therefore, the only damage award involved in this appeal is the $100,000 punitive damage award made in favor of appellee moving company and against appellant National By-Products Company.

Appellant contends that the trial court erred in refusing to grant its motion for a judgment notwithstanding the verdict. The argument is meritorious. An award of punitive damages is justified only where the evidence indicates that the defendant acted wantonly in causing the injury or with such a conscious indifference to the consequences that malice may be inferred. *Freeman* v. *Anderson*, 279 Ark. 282, 651 S.W.2d 450 (1983). We have previously defined wantonness and conscious indifference to the consequences. In *Ellis* v. *Ferguson*, 238 Ark. 776, 385 S.W.2d 154 (1964), we said:

> Wantonness is essentially an attitude of mind and imparts to an act of misconduct a tortious character, such conduct as manifests a 'disposition of perversity.' Such a disposition or mental state is shown by a person, when, notwithstanding his conscious and timely knowledge of an approach to an unusual danger and of common probability of injury to others, he proceeds into the presence of danger, with indifference to consequences and with absence of all care.

. . .

It is not necessary to prove that the defendant deliberately intended to injure the plaintiff. It is enough if it is shown that, indifferent to consequences, the defendant intentionally acted in such a way that the natural and probable consequence of his act was injury to the plaintiff.

In *Freeman* v. *Anderson*, 279 Ark. 282, 651 S.W.2d 450 (1983), we quoted with approval from *St. Louis, I. M. & S. Ry. Co.* v. *Dysart*, 89 Ark. 261, 116 S.W. 224 (1919):

The terms 'wilfulness, or conscious indifference to consequences from which malice may be inferred,' as used in the decisions of this court, means such conduct in the face of discovered peril. In other words, in order to superadd this element of damages by way of punishment, *it must appear that the negligent party knew, or had reason to believe, that his act of negligence was about to inflict injury, and that he continued in his course with a conscious indifference to the consequences*, from which malice may be inferred.

In the case at bar there was proof of gross negligence, but gross negligence is not sufficient to justify punitive damages.

The facts, when viewed most favorably to appellee, reveal that Foley, appellant's driver, was late leaving Batesville and his truck weighed 80,480 pounds, which is 480 pounds over the legal limit. Foley had received six citations in the last year for driving an overweight truck, and appellant had paid all of the citations. One of appellant's employees testified that the company had a disciplinary procedure for drivers who got an excessive number of overweight tickets, and he testified that Foley had an excessive number of such tickets, but admitted that Foley had not been cautioned or disciplined for driving an overweight truck. Appellee's expert witness on accident reconstruction testified that the 480 pounds excess weight on the 80,000 pound rig was a contributing, but insignificant, factor in the accident.

Between Batesville and the place of the accident, Foley exceeded the 55 miles per hour speed limit while going downhill. He got so close to one car that all the driver of the car could see in his rearview mirror was the grill of Foley's tractor. He got extremely close to another car while "tailgating" downhill.

Finally, he came around a curve at the crest of a small hill and had 804 feet of clear visibility to the bridge structure where the accident occurred. The house, which was sitting on the trailer, at the bridge, was 17 feet high, 28 feet wide, and 36 feet long, and because of its added height, could be seen from about 900 feet away. Foley either did not apply his brakes, or he applied them but they did not function properly.

Appellee's witnesses said Foley was going 60 to 70 miles per hour and made no effort to stop even though he went past a vehicle with a flashing warning light. They testified his brake lights did not come on, the tires did not skid, there was no smoke from either the brakes or tires, and there were no skid marks. However, appellee's expert brake witness testified that Foley probably did apply his brakes just before the accident, but the brakes were not working properly. While the expert did not testify about standards in the industry, he did testify that the Ryder Truck Company checks truck brakes every 8,000 miles. One of the appellant's employees testified that the company policy was to adjust the trailer brakes once a month, but the brakes on this trailer had not been adjusted for three and one-half months, and the tractor brakes had not been opened for a complete inspection for almost six months, although they were adjusted about 6 weeks before the accident. He further testified that appellant conducted an internal inspection of the brakes every 50,000 miles as recommended by the American Trucking Association and, in addition, the drivers conducted a daily inspection. There was no evidence that appellant had any knowledge that the brakes were faulty.

As Foley sped downhill at 70 miles per hour, he ran into the rear of the decedent's car and then struck appellee's rig and the house.

The foregoing facts do not show that appellant, either by its own policies or through the actions of its agent Foley, intentionally acted in such a way that the natural and probable consequence was to damage appellee's property. Nor do the facts show that appellant knew that some act of negligence was about to cause damage, but still continued to cause that damage. Accordingly, we reverse the judgment for punitive damages.

When we reverse a judgment for punitive damages, we

normally must also reverse the award for compensatory damages because the issues are so interwoven that an error with respect to one requires a retrial of the whole case. *Life & Casualty Ins. Co. of Tenn.* v. *Padgett*, 241 Ark. 353, 407 S.W.2d 728 (1966). In this case, however, the parties have stipulated as to the amount of compensatory damages, so we reverse on the punitive damages, but do not remand for new trial.

Reversed.

PURTLE and HAYS, JJ., dissent.

STEELE HAYS, Justice, dissenting. The majority's opinion has examined the evidence supporting punitive damages more from the appellant's standpoint than the appellee's. When viewed most favorably to the appellee, and with its fullest probative force, I believe there was substantial evidence to support the trial court's refusal to grant a motion for a directed verdict. *Dalrymple* v. *Fields*, 276 Ark. 185, 633 S.W.2d 362 (1982); *Holmes* v. *Hollingsworth*, 234 Ark. 347, 352 S.W.2d 96 (1961); *Ray Dodge Inc.* v. *Moore*, 251 Ark. 1036, 479 S.W.2d 518 (1972).

We no longer require actual malice as an essential constituent of punitive damages. It is enough if the defendant acted recklessly or wantonly, or with a conscious indifference to the safety and welfare of others using the highways. In *Dalrymple* v. *Fields, supra*, we said:

> Before punitive damages may be allowed it must be shown that in the absence of proof of malice or willfulness there was a wanton and conscious indifference for the rights and safety of others on the part of the tortfeasor.

While excessive speed may, in many circumstances, be no more than ordinary negligence, actions are not to be viewed in a vacuum, and what may be no more than negligence in one setting can readily be seen as wantonness or conscious indifference in another context. Thus driving 85 m.p.h. on certain stretches of highway may be relatively safe, or it may be negligence, depending on the traffic, weather, etc. But driving only 35 or 40 m.p.h. past a school at dismissal hour or close to a playground crowded with children with an evident indifference to the known tendencies of children could meet even restrictive concepts of wantonness. In *Airco, Inc.* v. *Simmons First National Bank*, 276 Ark.

486, 638 S.W.2d 660 (1982), we upheld a monumental award of punitive damages, not on proof that Airco had any intent to injure, but because the injury was the natural and probable consequence of Airco's conduct. It seems a fair analogy to me to say that when one knowingly drives an overloaded 18-wheeler, with defective brakes, on the highway at speeds of 70 m.p.h. by some accounts, oblivious of warning signals and without slowing down and with no apparent effort at stopping, approaching congestion on the highway, a collision is the natural and probable consequence of such conduct. At least, reasonable minds could differ on the issue of conscious indifference and that is enough.

In sum, the proof was that Robert Foley was several hours late leaving Batesville for Little Rock. His truck, an 18-wheeler, was loaded beyond the lawful limit. His truck, by whatever standard one chooses, was equipped with brakes that were not functioning properly. For some miles prior to the point of impact Mr. Foley drove so fast and so close to preceding vehicles that two of those motorists were alarmed by it and described his conduct at trial as speeding and "tailgating." Rounding a curve bearing into a straight, level stretch of highway some 900 feet from the appellee's house-moving rig, Mr. Foley proceeded at a high rate of speed (70 m.p.h. by one account) and with no discernible attempt to reduce his speed (some witnesses testified that his speed actually increased as he neared the impact point), past one vehicle with a warning light flashing, to strike the Staggs-McGee vehicle, knocking it a considerable distance in the air, and resulting in the deaths of the two occupants, before striking another vehicle and the house. Photographs of the scene attest to extraordinary force of the impact.

There was testimony that one of the brake shoes on the truck was not even touching the brake drum, rendering it useless as a braking device. There was testimony that none of the four rear brakes met Department of Transportation specifications. There was other material evidence from which an inference could be drawn that the brakes on the truck were seriously deficient and that fact was known by Foley and was in derogation of the policies of National By-Products, Inc. Lastly, there was proof from which the jury could quite properly have inferred that National By-Products, Inc., in addition to neglecting the safe operation of the truck involved, engaged in practices which promoted the over-

loading of its trucks beyond the legal limit, by routinely paying weight fines rather than demanding compliance by its drivers.

The proof, I believe, was such that a jury had a right under the law to exemplify the conduct of both defendants by assessing punitive damages. The judgment should be affirmed.

PURTLE, J., joins.