J.B. HUNT TRANSPORT, INC. *v.*
Arbert "Della" DOSS and Robert DOSS

94-1123 899 S.W.2d 464

Supreme Court of Arkansas
Opinion delivered June 5, 1995
Rehearing denied July 3, 1995.

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Bruce E. Munson* and *Julia L. Busfield*, for appellant.

*Boyett, Morgan, Millar & Killough, P.A.*, by: *Comer Boyett, Jr.*, for appellee Arbert "Della" Doss.

*Kent Pray* for appellee Robert Doss.

JACK HOLT, JR., Chief Justice. This is a tort case. The appellant, J.B. Hunt Transport, Inc., raises five points for reversal of a judgment in favor of appellees Arbert "Della" Doss and Robert Doss: (1) the trial court erred in excluding the testimony of J.B. Hunt's accident-reconstruction expert; (2) there was no substantial evidence to support the jury's verdict that appellee Robert Doss was acting within the course and scope of employment; (3) the trial court erred in denying J.B. Hunt's motion for a directed verdict on the issue of punitive damages and/or failing to set aside such an award; (4) the trial court erred in denying J.B. Hunt's motion for a new trial based upon the error in the assessment of punitive and compensatory damages; (5) the trial court erred as a matter of law in dismissing J.B. Hunt's third-party complaint against Robert Doss and in denying J.B. Hunt's claim for indemnity. We cannot say that the trial court committed reversible error.

## Facts

On October 1, 1990, shortly after 7:00 p.m., appellee Robert Doss was driving a tractor-trailer owned by appellant J.B. Hunt Transport, Inc., when he collided with an automobile driven by his former wife, appellee Arbert "Della" Doss. Mrs. Doss filed suit against J.B. Hunt Transport on May 8, 1992, alleging that Mr. Doss was an employee "acting within the scope of his employment at all times pertinent to this complaint" and requesting both compensatory and punitive damages. Mrs. Doss did not sue Mr. Doss.

J.B. Hunt denied the allegations contained in Mrs. Doss's complaint and subsequently, on January 8, 1993, filed a third-party complaint against Mr. Doss, stating that Mrs. Doss's "damages, if any, are attributable to conduct and actions of Robert Doss which were outside the scope of his employment in that, at the time of the accident, Mr. Doss was engaged in a personal endeavor solely for his own benefit and not for the benefit of his employer." Further, J.B. Hunt contended that Mr. Doss had "acted intentionally to inflict damage and injuries on the Plaintiff and therefore was outside the scope of his employment." J.B. Hunt sought, in the event it should be adjudged liable to Mrs. Doss, to be awarded indemnification and contribution from and judgment against Mr. Doss. Moreover, J.B. Hunt asserted that Mr. Doss, acting alone or in conspiracy with Mrs. Doss, made false statements to his employer, law enforcement officers, and others regarding the accident.

The matter was tried before a jury in Woodruff County Circuit Court on October 19 and 20, 1993. The trial court denied J.B. Hunt's motions for directed verdicts on the issues of scope of employment and punitive damages. Upon interrogatories, the jury awarded Mrs. Doss $170,000 in compensatory damages and $100,000 in punitive damages. In an order filed on March 23, 1994, the trial court denied J.B. Hunt's motion for indemnification and contribution from Mr. Doss and dismissed its third-party complaint against Mr. Doss with prejudice.

J.B. Hunt then filed a motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial, arguing that the verdict should be set aside as there was no substantial evidence to support a verdict that Robert Doss was acting in the scope of his employment. In addition, J.B. Hunt argued that the award of punitive damages should be set aside as contrary to the law and facts and as a violation of due process. In the alternative, J.B. Hunt sought a new trial because the jury's verdict was clearly against the preponderance of the evidence and there was an error in the assessment of damages. The trial court denied the motion, and this appeal followed.

## I. Accident reconstruction expert

In its first point for reversal, J.B. Hunt argues that the trial court erred in excluding testimony of Steve Jackson, the defense's

accident reconstruction expert. After the jury had been seated, a recess was called and a hearing was held regarding Mrs. Doss's motion in limine to prohibit introduction of the testimony of Mr. Jackson. The defense proffered the testimony of Mr. Jackson, who stated that he had examined photographs taken of the vehicles and the accident site that appeared to be inconsistent with statements of Mr. and Mrs. Doss that Mrs. Doss's vehicle was stopped at a stop sign when it was struck.

According to Mr. Jackson, the photographs indicated that

the impact was clearly on the shoulder in the intersection rather than in proximity to the stop sign, and that indicated by debris and tire marks where the impact occurred. And those tire marks have a particular characteristic that actually show that there was an impact.

On cross-examination, counsel for Mrs. Doss questioned Mr. Jackson about the reliability of the investigating officer's report:

Q Now, if a State Police Officer investigated the accident this night and recorded his data while it was fresh on his mind, wouldn't you agree that he would be a better judge how the accident occurred and the points of impact rather than looking at photographs over a year later?

A Well, if it were a simple matter of doing that, he would, yes.

Q What specifically could you offer by looking at those photographs that a State Trooper could not offer who was there at the scene of the accident and was familiar with the intersection and investigated that particular wreck on that night as compared with the investigation of another person who was not there?

A Well, first of all, I don't know if he's investigated other accidents at that intersection. I take your word for it that he has if you want it put on the record that he has.

Secondly, I don't know the process that he used to document — I don't know where he started his documentation measurements, and since there was no conflict in the statement of either driver as to where it happened, I

don't know that he had had a whole lot of reason to have a real detailed documentation of the scene.

In questioning by the court, Mr. Jackson noted that the investigating officer

didn't indicate that he found any debris, nor did he document any debris on the highway. . . . Also, there was no documentation of the kind of scrub marks, the kind of tire-scrubbing that you'd find in an impact area.

. . .

What he [the State Trooper] says was that his investigation revealed that it happened at the stop sign, and that the tire marks began at the stop sign and went on to the west, *but the photographs don't show that to be the case, and that's our disagreement problem there.*

(Emphasis added.)

At the conclusion of Mr. Jackson's proffered testimony, the trial court declared that

at this time, I'm going to direct Mr. Jackson not to testify about the point of impact. The reliance on photographs as to where all the debris lay seems to me possibly misplaced, certainly not conclusive, unless the trooper says that — and I assume the trooper uses the same kind of — Mr. Jackson has taught there, and the trooper uses the same kind of ground evidence to determine point of impact. I always hear about the debris and where it falls, and *if Trooper Hudson testifies that it occurred at the stop sign as an eyewitness, I'm going to prohibit Mr. Jackson from testifying it occurred someplace different.* On the other hand, if Mr. Hudson does not know where it occurred or doesn't testify, is silent on that, he can go into that. But at this point, now, at least on the assumption Mr. Hudson is going to say, as he, I think, implied to me, that it occurred at the stop sign, *I'm going to prohibit him, based upon the photographs, deciding it occurred someplace else since the photographs may or may not be inclusive.*

(Emphasis added.) The trial court went on, however, to allow

Mr. Jackson to testify concerning tire marks on Mrs. Doss's car.

Explaining his rejection of Mr. Jackson's testimony on the area of impact, the judge stated that

> I'm allowing the trooper, assuming the trooper does a proper foundation, that is, where he says the debris landed and that sort of thing, I'm going to let him testify as to where the impact occurred based upon the fact that he was there and had the full range of view of the impact area. *My problem with Mr. Jackson doesn't have to do with his inability to analyze where the debris is. It's that whether the photographs are in fact inclusive of the entire area, and that's what my problem is. It doesn't have to do with the fact of what he saw. I'm not questioning what he saw. I'm questioning whether he was able to see the entire area. That's where I'll leave it.*

(Emphasis added.)

It is important to note that the trial court did not exclude Mr. Jackson's entire testimony. Instead, J.B. Hunt elected not to call its accident reconstruction expert after the trial court had excluded that portion of his testimony concerning the point of impact. The trial court based its limited exclusion on the adequacy of the photographs upon which Mr. Jackson relied — "whether the photographs are in fact inclusive of the entire area."

■ This court observed, in *Banks* v. *Jackson*, 312 Ark. 232, 848 S.W.2d 408 (1993), that while, as a general rule, attempts to reconstruct accidents by means of expert testimony are viewed with disfavor, we have consistently recognized exceptions when it appears that a particular situation is beyond the jurors' ability to understand the facts and draw their own conclusions. Whether a particular case should be governed by the general rule or should be treated as an exception is a matter within the trial judge's discretion. *McElroy* v. *Benefield*, 299 Ark. 112, 771 S.W.2d 274 (1989); *Drope* v. *Owens*, 298 Ark. 69, 765 S.W.2d 8 (1989).

■ In all evidentiary matters, the trial judge must be afforded broad latitude because he or she alone is in the best position to decide what evidence would aid the jury and what would confuse the issues. *Firestone Tire & Rubber Co.* v. *Little*, 276 Ark. 511, 639 S.W.2d 726 (1982). Unless the trial judge is

clearly wrong, we will not substitute our judgment for his or hers. *Id.*

Here, the reconstructionist's opinion on the point of impact was based in large part on photographs of the scene. The trial court had the benefit of those photographs in determining the admissibility of Mr. Jackson's testimony. On appeal, however, J.B. Hunt has failed to abstract the photographs in question.

In order for us to determine whether the trial court was clearly wrong in its ruling, we must have a clear understanding of the excluded testimony. As Ark. Sup. Ct. R. 4-2(a)(6) provides:

> Whenever a map, plat, *photograph*, or other similar exhibit, which cannot be abstracted in words, must be examined for a clear understanding of the testimony, *the appellant shall reproduce the exhibit by photography or other process and attach it to the copies of the abstract* filed in the Court and served upon the opposing counsel, *unless this requirement is shown to be impracticable and is waived by the Court upon motion.*

(Emphasis added.) It is essential that the photographs of the accident site be available in the abstract for our examination. As we have pointed out repeatedly, it is a practical impossibility for seven justices to examine the single transcript filed with this court, and we will not do so. *Edwards* v. *Neuse,* 312 Ark. 302, 849 S.W.2d 479 (1993); *Hunter* v. *Williams,* 308 Ark. 276, 823 S.W.2d 894 (1992); *Mills* v. *Holland,* 307 Ark. 418, 820 S.W.2d 63 (1991); *Zini* v. *Perciful,* 289 Ark. 343, 711 S.W.2d 477 (1986); *Shorter University* v. *Franklin,* 75 Ark. 571, 88 S.W. 974 (1905).

Therefore, we cannot consider the merits of J.B. Hunt's first argument.

## II. Course and scope of employment

For its second point for reversal, J.B. Hunt contends that the trial court erred in denying its motions for directed verdict and alternative motions for judgment n.o.v. or new trial on the basis that there was no substantial evidence to support a finding that Robert Doss was acting within the course and scope of his employment at the time of the accident.

■ Substantial evidence is that evidence which is of sufficient force and character that it will, with reasonable certainty and precision, induce the mind to pass beyond suspicion or conjecture. *Bank of Malvern* v. *Dunklin*, 307 Ark. 127, 817 S.W.2d 873 (1991). We are persuaded that the record offers sufficient evidence that Mr. Doss was acting within the course and scope of his employment when the truck he was driving ran into Mrs. Doss's car.

The parties stipulated that the truck involved in the accident was owned by J.B. Hunt and that Robert Doss, the operator of the truck, was an employee of J.B. Hunt. Despite the fact that, at the time of the collision, Mr. Doss was on his way to the Fast Lane Truck Stop in McCrory, Arkansas, to "check with a buddy" and had been drinking in violation of company policy, he was nevertheless wearing a J.B. Hunt uniform and was planning to spend the night at the truck stop before embarking on a twelve-hour, 600-mile drive to make a delivery in Alsip, Illinois. He testified that, under company policy, he was allowed "discretion" to pace his driving as he chose, provided that he made his delivery on schedule. According to his testimony, Mr. Doss was attempting to hook up a citizens' band radio when he looked up and saw his former wife's car in front of him.

■■ For purposes of *respondeat superior*, whether an employee is acting within the scope of employment is not necessarily dependent upon the situs of the occurrence but on whether the individual is carrying out the object and purpose of the enterprise, as opposed to acting exclusively in his own interest. *Razorback Cab of Fort Smith, Inc.* v. *Lingo*, 304 Ark. 323, 802 S.W.2d 444 (1991). In the present case, there was substantial evidence that Mr. Doss was engaged in an employer-approved assignment, the details of the execution of which had been entrusted to his discretion. The question is not whether the evidence would have supported some other conclusion but whether it supports the conclusion reached by the trier of fact. *John Cheeseman Trucking, Inc.* v. *Dougan*, 313 Ark. 229, 853 S.W.2d 278 (1993).

The trial court did not abuse its discretion in submitting to the jury the question of whether Mr. Doss was acting in the course and scope of his employment at the time of the accident.

*III. Punitive damages or set-aside — directed verdict*

In its third point on appeal, J.B. Hunt asserts that the trial court erred in denying its motion for a directed verdict on the issue of punitive damages and/or in failing to set aside such an excessive award. We will address the question of excessiveness under Point IV.

■ Punitive damages are justified only when the defendant acts wantonly or with such conscious indifference to the consequences of his acts that malice may be inferred; negligence, however gross, will not support such an award. *Missouri Pacific Railroad Co.* v. *Mackey*, 297 Ark. 137, 760 S.W.2d 59 (1988). In *Honeycutt* v. *Walton*, 294 Ark. 440, 442, 743 S.W.2d 809, 810 (1988), this court reiterated its long-held position that "malice may be inferred from the operation of a motor vehicle, a potentially lethal machine, by one whose judgment, responses and coordination are impaired by alcohol."

■ Mr. Doss failed a breathalyzer test and was reported to have smelled of alcohol. A corporation may be held liable for punitive damages for acts done by its agents or servants acting within the scope of their employment. *B & F Engineering, Inc.* v. *Cotroneo*, 309 Ark. 175, 830 S.W.2d 835 (1992); *Miller* v. *Blanton*, 213 Ark. 246, 210 S.W.2d 293 (1948).

■ J.B. Hunt also argues that the amount of punitive damages awarded ($100,000) was excessive and violative of "procedural safeguards" required by the United States Constitution. We hold that the Arkansas general standard for punitive damages, employed in this case, passes constitutional muster because it ensures meaningful and adequate review for the trial court as required by *Pacific Mutual Life Insurance Co.* v. *Haslip*, 499 U.S. 1 (1991). *See Robertson Oil Co.* v. *Phillips Petroleum Co.*, 779 Fed. Supp. 994 (W.D. Ark. 1991).

The trial court did not abuse its discretion in submitting to the jury the issue of punitive damages.

*IV. Punitive and compensatory damages — new trial*

The fourth argument advanced by J.B. Hunt is that the trial court erred in denying its motion for a new trial based upon the error in the assessment of punitive and compensatory damages.

This point overlaps a portion of the third in its focus on the asserted excessiveness of the damages.

We are thwarted in our review by J.B. Hunt's failure to abstract any of Mrs. Doss's medical bills, amounting to $20,149.08 (Plaintiff's Exhibit 1) or the oral deposition of Mrs. Doss's treating physician, Dr. Terry Green, who testified to Mrs. Doss's 20 percent permanent partial disability rating. Our review on appeal is limited to the record as abstracted, and we will not reach the merits of an issue when the documents in the transcript that are necessary for an understanding of the matter are not abstracted. *See Burns* v. *Carroll*, 318 Ark. 302, 885 S.W.2d 16 (1994).

### V. Dismissal of third-party complaint and denial of indemnity

Finally, J.B. Hunt argues that the trial court erred as a matter of law in dismissing the company's third-party complaint against Robert Doss and in denying the employer's claim for indemnity.

J.B. Hunt's liability was premised on the theory of *respondeat superior*. A common law cause of action for indemnity against the employee is available to an employer who has been held vicariously liable for the actions of the employee. *Transport Insurance Co.* v. *Manufacturers Casualty Insurance Co.*, 226 F. Supp. 251 (E.D. Ark. 1964), *aff'd sub nom. Pacific National Insurance Co.* v. *Transport Insurance Co.*, 341 F.2d 514 (8th Cir. 1965). The liability of the servant is based upon his contract, and he is bound to indemnify the master for damages resulting from his failure to perform the duty that he owes to his master. 53 Am. Jur.2d *Master and Servant*, § 108.

The trial court issued the following order:

A jury finding for HUNT on its complaint against R. DOSS would have established indeminication (*sic*) for HUNT.

The jury found that R. DOSS was acting whithin (*sic*) the scope of his employment with HUNT.

IT IS, THEREFORE CONSIDERED AND ORDERED the (*sic*) HUNT's [M]OTION FOR INDEMNIFICATION AND CONTRIBUTION is DENIED. IT IS FURTHER CONSIDERED AND ORDERED that HUNT'S THIRD PARTY

COMPLAINT against R. DOSS is DISMISSED with prejudice.

Yet, despite the elliptical phrasing, the trial court did not commit reversible error in denying J.B. Hunt's motion for indemnification and dismissing the third-party complaint.

 It was necessary for J.B. Hunt to ask for jury instructions on the elements of the counterclaim. Having failed to proffer the relevant jury instructions, the appellant waived the matter and cannot now take issue with the trial court on this point.

Affirmed.