D'ARBONNE CONSTRUCTION COMPANY, INC., *et al.*
*v.* Sylvia Leann FOSTER, *et al.*

CA 01-661                                         91 S.W.3d 540

Court of Appeals of Arkansas
Divisions I, III and IV
Opinion delivered December 11, 2002

88

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Bruce Munson* and *Julia L. Busfield*, for appellants.

*Hamilton & Hamilton*, by: *James A. Hamilton*, for appellee Sylvia Leann Foster.

*Richard Byrd* and; *Holiman & Kennedy*, by: *Richard E. Holiman*, for appellees Sherri, Gus, and Randy Culbreath.

JOHN MAUZY PITTMAN, Judge. This is a personal-injury/wrongful-death case on remand from the Arkansas Supreme Court. The supreme court has directed us to consider the case on its merits after it decided on certification that the judgment appealed from was a final one. *D'Arbonne Constr. Co. v. Foster*, 348 Ark. 375, 72 S.W.3d 862 (2002). In this appeal, the sole issue is the sufficiency of the evidence to support the award of punitive damages. We affirm.

On November 9, 1999, appellant Lee Earnest Johnson was driving a logging truck for appellant D'Arbonne Construction Company (D'Arbonne) from Crossett east on Highway 82. A trailer was riding "piggy back" on the truck. At the same time, defendant Wayne Canley (not a party on appeal) was also traveling east on the same highway. James Tony Culbreath was driving west on Highway 82 with his wife, appellee Sherri Culbreath, his minor daughter Keeli Mercedes Culbreath, and appellee Sylvia Foster as passengers. Johnson crossed into the westbound lane and struck the Culbreath vehicle head-on. James Tony Culbreath and

Keeli Mercedes Culbreath died as a result of injuries sustained in the collision. Sherri Culbreath and Foster sustained extensive personal injuries. Sherri Culbreath, individually and as administratrix of the estates of James Tony Culbreath and Keeli Mercedes Culbreath, filed personal injury and wrongful death actions against appellants (D'Arbonne and Johnson), Canley, and defendant Caskey Terral, individually and d/b/a Terral Logging Company (not a party to this appeal). Appellee Foster filed a separate action for her personal injuries. It was alleged that D'Arbonne and Johnson were acting as agents or in a joint enterprise with Terral.

The cases were consolidated and tried before a jury, which found both D'Arbonne and Johnson negligent and assigned each of them fifty percent of the fault. The jury also found that appellants were not acting as agents of Terral at the time of the accident. The jury returned compensatory-damage awards of $175,000 to the estate of Keeli Mercedes Culbreath, $267,000 to the estate of James Tony Culbreath, $50,000 to appellee Sherri Culbreath, and $225,000 to appellee Foster. In addition, the jury awarded separate punitive-damage awards of $120,000 to the estate of Keeli Mercedes Culbreath, $180,000 to the estate of James Tony Culbreath, $50,000 to appellee Sherri Culbreath, and $50,000 to appellee Foster.

Appellants moved for a directed verdict on the issue of the punitive damages, alleging that there was insufficient evidence to submit that claim to the jury. The present appeal arose from the denial of that motion. The only damage awards involved in this appeal are the $120,000 punitive-damages award made in favor of the estate of Keeli Mercedes Culbreath, the $180,000 punitive-damages award made in favor of the estate of James Tony Culbreath, the $50,000 punitive-damages award made in favor of appellee Sherri Culbreath, and the $50,000 punitive-damages award made in favor of appellee Sylvia Foster and against appellants jointly and severally. Appellants contend that the trial court erred in refusing to grant the motion for a directed verdict on the issue of the punitive damages.

When we review an award of punitive damages, we consider the extent and enormity of the wrong, the intent of the party committing the wrong, all the circumstances, and the financial and social condition and standing of the erring party. *United Ins. Co. of Am. v. Murphy*, 331 Ark. 364, 961 S.W.2d 752 (1998). An instruction for punitive damages may be given when there is evidence that a party likely " 'knew or ought to have known, in the light of the surrounding circumstances, that his conduct would naturally or probably result in injury and that he continued such conduct in reckless disregard of the consequences from which malice could be inferred.' " *McLaughlin v. Cox*, 324 Ark. 361, 371, 922 S.W.2d 327, 333 (1996) (quoting *Allred v. Demuth*, 319 Ark. 62, 890 S.W.2d 578 (1994)). Punitive damages are justified only when the defendant acts wantonly or with such conscious indifference to the consequences of his acts that malice may be inferred. *J.B. Hunt Transp., Inc. v. Doss*, 320 Ark. 660, 899 S.W.2d 464 (1995).

Because the boundary between gross negligence and conduct that can be characterized as willful and wanton is indistinct, it is necessarily subjective in part. The twofold intent behind punitive damages is to punish the wrongdoer and to exemplify such conduct for others to note. *Alpha Zeta Chapter of Pi Kappa Alpha Fraternity v. Sullivan*, 293 Ark. 576, 740 S.W.2d 127 (1987). Negligence alone, however gross, is not enough to sustain punitive damages. *Id.* There must be some element of wantonness or such a conscious indifference to the consequences that malice might be inferred. In other words, in order to warrant a submission of the question of punitive damages, there must be an element of willfulness or such reckless conduct on the part of the defendant as is equivalent thereto. *Id.* Whether a vehicle is being operated in such a manner as to amount to wanton or willful conduct in disregard of the rights of others must be determined by the facts and circumstances in each individual case. *Lawrence v. Meux*, 282 Ark. 512, 669 S.W.2d 464 (1984); *Ellis v. Ferguson*, 238 Ark. 776, 385 S.W.2d 154 (1964); *Splawn v. Wright*, 198 Ark. 197, 128 S.W.2d 248 (1939).

Our standard of review of the denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence, which is evidence that goes beyond suspicion or conjecture and is sufficient to compel a conclusion one way or the other. *Barnes, Quinn, Flake & Anderson, Inc. v. Rankins*, 312 Ark. 240, 848 S.W.2d 924 (1993). This includes the issue of punitive damages. *Carroll Elec. Coop. Corp. v. Carlton*, 319 Ark. 555, 892 S.W.2d 496 (1995). It is not our province to try issues of fact; we simply review the record for substantial evidence to support the jury's verdict. *John Cheeseman Trucking, Inc. v. Dougan*, 313 Ark. 229, 853 S.W.2d 278 (1993). In determining whether there is substantial evidence, we view the evidence in the light most favorable to the party against whom the verdict is sought and give the evidence its strongest probative force. *Integon Indem. Corp. v. Bull*, 311 Ark. 61, 842 S.W.2d 1 (1992).

The evidence bearing on the issue of punitive damages relates to appellant Johnson's driving record, Johnson's statements to third parties concerning the condition of the truck, and the general condition of the truck and its maintenance record. Viewing this evidence, as we must, in the light most favorable to the appellees, the record reflects that Johnson, with twenty years' driving experience, was speeding at the time of the accident and was too close to the Canley vehicle. Johnson received five citations for speeding or defective equipment within five years prior to the accident, and D'Arbonne paid the citations out of Johnson's paycheck.

Trooper Fuller spoke with Johnson while investigating the accident, and Johnson stated that there were problems with the truck. The trooper suspected that there may have been problems with the brakes. Johnson told bystanders at the scene that he "couldn't hold the truck on the road" and that he "told 'em and told 'em to get the walking beam fixed."

The truck involved in the accident had approximately 500,000 miles on it at the time of the accident. Johnson made daily inspections of the truck and adjustments to the brakes and to the slack adjustor. The company had a weekly schedule for main-

tenance to be performed on its vehicles, usually Fridays and Saturdays. This maintenance was performed by the company mechanic. The mechanic, Pancho Hernandez, would have someone record the work performed in a log. The last log entry was August 1, 1999, the day Hernandez left D'Arbonne. The last log entry showing brake work, however, was in 1994.

Lewis Elston testified as an expert concerning the mechanical condition of the truck. Elston inspected the truck twice. He looked at all the wheels and found that one wheel seal was leaking and had been doing so for a while. He found that the No. 2 axle had been backed off and that it appeared that it had been backed off for some time. The cam bushings and slack adjustor to that brake were worn. The bushings and the cam were both worn. He found oil leaking in another wheel. Elston opined that it had been leaking for a while because there was oil residue inside the wheel and the hub did not have any oil, that the oil leak could cause that brake to lock up in an emergency, and that this oil leak could have begun up to two or three years prior to the accident. The slack adjustor had wear slack in it and was not supposed to be in this condition. Elston further opined that the manner in which the brakes were adjusted would cause the truck to pull to the left. Elston testified that he would not put a truck in such a condition into service because it would be dangerous. It was Elston's opinion that the condition of the walking beams, the brakes, and everything else he found wrong with the truck contributed to the accident in that the combination of defects caused the truck to pull to the left.

David Thomas also testified as an expert log-truck mechanic. Thomas noticed that a quick-release valve was missing from the front axle and that an air line had been spliced together with quick-disconnects. He also noted that there was nothing but the bracket where the quick-release had broken off. Thomas also found slack in the U-joint, which could affect steering in an emergency situation, and wear and dry rot on the walking beams. He also testified that the brake drums were badly worn and that the brake shoes were grooved to meet the drums as a result of a lack of maintenance. Thomas found that the right second axle

brake had been backed off with a slack adjustor to a point where the brake shoes would not touch the drum, effectively disabling that brake. Thomas stated that the brakes were so worn that they could not function properly, and that brakes in such a condition will "cam over" and lock up when applied, rendering the truck immobile. He stated that no one making weekly or regular inspections of this truck could have missed this defect, and opined that the brakes had been intentionally backed off in lieu of proper maintenance to prevent camming over.

Appellants contend that, at most, the evidence in the present case would show negligence on their part, and rely on *National By-Products, Inc. v. Searcy House Moving Co.*, 292 Ark. 491, 731 S.W.2d 194 (1987), for the proposition that gross negligence will not support an award of punitive damages. We think that the facts of the present case are sharply distinguished from those of *National By-Products*. In the latter case, Foley, a driver for National, was late leaving Batesville, and his truck weighed 480 pounds over the legal limit. Foley had received six citations in the prior year for driving an overweight truck, and the appellant had paid all of the citations. One of National's employees testified that the company had a disciplinary procedure for drivers who got an excessive number of overweight tickets, and he testified that Foley had an excessive number of such tickets but admitted that Foley had not been cautioned or disciplined for driving an overweight truck. Foley exceeded the 55-miles-per-hour speed limit while going downhill. He got so close to one car that all the driver of the car could see in his rearview mirror was the grill of Foley's tractor. He got extremely close to another car while tailgating downhill. Finally, he came around a curve at the crest of a small hill and had 804 feet of clear visibility to the bridge structure where the accident occurred. Searcy House Moving was moving a house north on the same highway. The house, which was sitting on a trailer at the bridge, was 17 feet high, 28 feet wide, and 36 feet long and, because of its added height, could be seen from about 900 feet away. As Foley sped downhill at 70 miles per hour, he ran into the rear of the decedent's car and then struck the appellee's rig and the house. Foley either did not apply his brakes, or he applied

them but they did not function properly. The appellee's witnesses said that Foley was going 60 to 70 miles per hour and made no effort to stop even though he went past a vehicle that had a flashing warning light. They testified that his brake lights did not come on, the tires did not skid, there was no smoke from either the brakes or tires, and there were no skid marks. However, the appellee's expert brake witness testified that Foley probably did apply his brakes just before the accident but that the brakes were not working properly. While the expert did not testify about standards in the industry, he did testify that the Ryder Truck Company checks truck brakes every 8,000 miles. One of National's employees testified that the company policy was to adjust the trailer brakes once a month but that the brakes on this trailer had not been adjusted for three-and-one-half months and the tractor brakes had not been opened for a complete inspection for almost six months, although they were adjusted about six weeks before the accident. He further testified that National conducted an internal inspection of the brakes every 50,000 miles as recommended by the American Trucking Association and, in addition, the drivers conducted a daily inspection. There was no evidence that National had any knowledge that the brakes were faulty.

The supreme court reversed the award of punitive damages, stating:

> The foregoing facts do not show that appellant, either by its own policies or through the actions of its agent Foley, intentionally acted in such a way that the natural and probable consequence was to damage appellee's property. Nor do the facts show that appellant knew that some act of negligence was about to cause damage, but still continued to cause that damage.

*Id.* at 495, 731 S.W.2d at 196–197.

Nor are the facts of the present case similar to those presented in *Carroll Electric Cooperative, supra,* where a driver struck a guy wire attached to a power pole belonging to the appellant cooperative, causing a power outage. A crew was sent to the scene to assess the damage to the power pole. The crew observed the poles and found no damage to them. After inspecting the poles with

flashlights, the crew decided not to replace the guy wire and that it was safe to restore the power to the line served by the pole to which the guy wire had been attached. Later, a wire supported by that pole came down at some point and energized a nearby fence. The fence ran close to a liquid-propane gas tank outside the Carlton home, which was about an eighth of a mile away from the accident scene. Power arced from the fence to the tank and ran from the tank up a pipe to a clothes dryer in the Carlton home. The fire was determined to have begun sometime later at the clothes dryer.

The trial court directed a verdict in favor of the cooperative on the issue of punitive damages. The supreme court affirmed the directed verdict on the issue of punitive damages, stating:

> There was no evidence tending to prove that CECC acted with actual malice. Nor was there evidence of conscious indifference to the consequences of its actions. The jury was justified in finding negligence in direct connection with the incident and perhaps in the general lack of any inspection program more rigorous than casually viewing the lines as CECC workers drove past. That, however, does not satisfy the criteria for punitive damages. Mere negligence, or even gross negligence, is not sufficient to justify punitive damages.

*Id.* at 564, 892 S.W.2d at 501 (citations omitted).

Appellants in the present case argue that the evidence of poor maintenance of the truck presents a mere question of negligence and will not support the award of punitive damages. We do not agree. Here, there was not only evidence of gross negligence in the failure to maintain the braking and control systems of the truck and in permitting Johnson to drive it, but there was also evidence that the brakes were intentionally disabled so that the truck could continue to operate, after a fashion, despite the lack of maintenance. An award of punitive damages is proper where there is evidence that the defendants "knew or ought to have known, in the light of the surrounding circumstances, that his conduct would naturally or probably result in injury and that he continued such conduct in reckless disregard of the consequences from which malice could be inferred." *McLaughlin v. Cox*, 324 Ark. at 371,

922 S.W.2d at 333. *See also HCA Health Servs. v. National Bank of Commerce*, 294 Ark. 525, 745 S.W.2d 120 (1988); *National By-Products, supra.* We think that the evidence in the present case amply satisfies this requirement, and we hold that the trial court did not err in denying appellants' motion for a directed verdict as to punitive damages.

Affirmed.

ROBBINS, BIRD, GRIFFEN, and BAKER, JJ., agree.

STROUD, C.J., HART, NEAL, and ROAF, JJ., dissent.

ANDREE LAYTON ROAF, Judge, dissenting. I would reverse this case for the simple reasons that 1) our supreme court has never allowed an award of punitive damages to stand in a vehicular case except where the accident involved drunk driving or racing, and 2) the facts of this case are not so compelling as to allow us to depart from the precedent handed down by our supreme court.

I will not belabor the facts of this case, which are exhaustively set out by the majority to the end of distinguishing this case from *National By-Products, Inc. v. Searcy House Moving Co.*, 292 Ark. 491, 731 S.W.2d 194 (1987), a case that involved speeding, an overweight truck, and possibly faulty brakes that had not been adjusted in over three months or inspected in nearly six months. The evidence in the case before us, in spite of all of the expert testimony, also involves only possibly faulty brakes and alleged lapses in inspection. Indeed, the truck in this case passed annual commercial inspection, was inspected weekly, and had recently passed DOT inspection.

The majority has gone to great lengths in the effort to distinguish this case from *National By-Products, supra* and its ilk. In a more recent case, *National Bank of Commerce v. McNeill Trucking Co.*, 309 Ark. 80, 828 S.W.2d 584 (1992), the concurring justice expressed concern about our supreme court's "cautious" approach toward the issue of punitive damages in vehicular accident cases, and extensively outlined the history of its precedent on this subject. It is significant that there has been no departure from this

approach since 1992, although there has been at least one case in which punitive damages were again found proper where the driver at fault was intoxicated. *See J.B. Hunt Transport, Inc. v. Doss*, 320 Ark. 660, 899 S.W.2d 464 (1995).

The alleged reluctance of our supreme court to impose punitive damages in vehicular cases has been noted by one commentator, who also observed that the Eighth Circuit, "perhaps expressing its displeasure with or disapproval of the strictness of *National By-Products*," in *Potts v. Benjamin*, 882 F.2d 1320 (8th Cir. 1989), affirmed an award of punitive damages in an Arkansas vehicular- accident case involving a tractor truck with inoperable brakes on a "piggy-backed" trailer.[1] The Eighth Circuit distinguished the facts in *Potts v. Benjamin* from the facts in *National By-Products* when affirming the punitive-damage award, as the majority has done in the case before us.

I do agree with the majority's assertion that "negligence alone, however gross, is not enough to sustain punitive damages," and that the boundary between gross negligence and willful and wanton conduct can be "indistinct." This may well be why our supreme court has been reluctant to expose the driving public to the additional onus of liability for punitive damages in vehicular negligence cases except where there is clear evidence of willful and wanton conduct, such as found in driving drunk and racing on the public roads. I cannot say that driving with possibly defective equipment constitutes or should constitute conduct that goes beyond gross negligence, and would reverse and remand this case in keeping with the standard set forth in *National By-Products*.

STROUD, C.J., and HART, and NEAL, JJ., join.

---

[1] Howard W. Brill, *Punitive Damages in Arkansas- Expanded? Restricted?*, 1990 ARK.L.NOTES 25.