D'ARBONNE CONSTRUCTION CO., Inc., Caskey Terral, Terral Logging Company, Lee E. Johnson, Warner Canley *v.* Sylvia Leann FOSTER, Gus Culbreath, Randy Culbreath, Sherri Culbreath

02-1365                                    123 S.W.3d 894

Supreme Court of Arkansas
Opinion delivered October 9, 2003

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Bruce Munson* and *Julia L. Busfield*, for appellants.

*Hamilton & Hamilton*, by: *James A. Hamilton*, for appellee Sylvia Leann Foster.

*Richard Byrd* and; *Holiman & Kennedy*, by: *Richard E. Holiman*, for appellees Sherri, Gus & Randy Culbreath.

W. H. "DUB" ARNOLD, Chief Justice. The sole issue in this personal injury/wrongful death case is whether an award of punitive damages should be upheld. We hold that there was substantial evidence to support the award of punitive damages, and affirm the judgment.

On November 9, 1999, Lee Earnest Johnson was driving a logging truck for appellant, D'Arbonne Construction Company, from Crossett east on Highway 82. A trailer was riding "piggy back" on the truck. At the same time, Wayne Canley was also traveling east on the same highway. James Tony Culbreath was driving west on Highway 82 with his wife, appellee Sherri Culbreath, his minor daughter, Keeli Mercedes Culbreath, and appellee, Sylvia Foster, as passengers. Johnson crossed into the westbound lane and struck the Culbreath vehicle head-on. James Tony Culbreath and Keeli Mercedes Culbreath died as a result of injuries sustained in the collision, and Sherri Culbreath and Foster sustained extensive personal injuries. Sherri Culbreath, individually and as administratrix of the estates of James Tony Culbreath and Keeli Mercedes Culbreath, filed personal injury and wrongful death actions against appellants (D'Arbonne and Johnson), Canley, and defendant Caskey Terral, individually and d/b/a Terral Logging Company (not a party to this appeal). Appellee Foster filed a separate action for her personal injuries.

The cases were consolidated and tried before a jury. The jury concluded that both D'Arbonne and Johnson were negligent and assigned each of them fifty percent of the fault. The jury also found that appellants were not acting as agents of Terral at the time of the accident. The jury returned compensatory-damage awards of $175,000 to the estate of Keeli Mercedes Culbreath, $267,000 to the estate of James Tony Culbreath, $50,000 to appellee Sherri Culbreath, and $225,000 to appellee Foster. In addition, the jury awarded separate punitive-damage awards of $120,000 to the estate of Keeli Mercedes Culbreath, $180,000 to the estate of

James Tony Culbreath, $50,000 to appellee Sherri Culbreath, and $50,000 to appellee Foster. Appellants moved for a directed verdict on the issue of punitive damages, alleging that there was insufficient evidence to submit that claim to the jury. The trial court denied that motion.

Appellant appealed to the Arkansas Court of Appeals, arguing that the denial of the motion for directed verdict on punitive damages was error. The court of appeals affirmed the trial court and recounted evidence of Johnson's driving record, the poor maintenance of the truck, the decrepit condition of the truck as testified by two experts, and Johnson's statements at the scene of the accident. The court of appeals found that the truck had no brakes and that Johnson had received five citations in the last five years for speeding or defective equipment. The court of appeals held that not only did the record support a finding of gross negligence in the failure to maintain the braking and control systems of the truck and in permitting Johnson to drive it, but there was also evidence that the brakes were intentionally disabled so that the truck could continue to operate, despite the lack of maintenance. The court of appeals held that the evidence amply supported denial of appellants' directed-verdict motions. *D'Arbonne Construction Co. v. Foster*, 80 Ark. App. 87, 91 S.W.3d 540 (2002).

■ We subsequently granted appellant's petition for review. When this court grants a petition to review a decision by the court of appeals, this court reviews the appeal as if it had been originally filed in this court. *Lewellyn v. Lewellyn*, 351 Ark. 346, 93 S.W.3d 681 (2002).

■■ Our standard of review of a denial of a motion for directed verdict is whether the jury's verdict is supported by substantial evidence. *Wal-Mart Stores, Inc. v. The P.O. Market, Inc.*, 347 Ark. 651, 66 S.W.3d 620 (2002). Substantial evidence is defined as evidence of sufficient force and character to compel a conclusion one way or the other with reasonable certainty and it must force the mind to pass beyond mere suspicion or conjecture. *State Auto Property Cas. Ins. Co. v. Swaim*, 338 Ark. 49, 991 S.W.2d 555 (1999); *Barnes, Quinn, Flake & Anderson, Inc. v. Rankins*, 312 Ark. 240, 848 S.W.2d 924 (1993). When determining the sufficiency of the evidence, we review the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered, and we give that evidence

the highest probative value. *Id.* A motion for directed verdict should be granted only when the evidence viewed is so insubstantial as to require the jury's verdict for the party to be set aside. *Conagra, Inc. v. Strother,* 340 Ark. 672, 13 S.W.3d 150 (2000). A motion for directed verdict should be denied when there is a conflict in the evidence, or when the evidence is such that a fair-minded people might reach different conclusions. *Wal-Mart Stores, Inc. v. Kelton,* 305 Ark. 173, 806 S.W.2d 373 (1991). In the case of a denial of a directed verdict, we must determine if there was substantial evidence to support the jury's verdict. *Id.*

■ This court has said that an award of punitive damages is justified only where the evidence indicates that the defendant acted wantonly in causing the injury or with such a conscious indifference to the consequences that malice may be inferred. *Stein v. Lukas,* 308 Ark. 74, 823 S.W.2d 832 (1992); *Missouri Pacific Railroad v. Mackey,* 297 Ark. 137, 760 S.W.2d 59 (1988); *National By-Products, Inc. v. Searcy House Moving Company, Inc.,* 292 Ark. 491, 731 S.W.2d 194 (1987). In other words, in order to superadd this element of damages by way of punishment, it must appear that the negligent party knew, or had reason to believe, that his act of negligence was about to inflict injury, and that he continued in his course with a conscious indifference to the consequences, from which malice may be inferred. *Mackey,* 297 Ark. at 145; 760 S.W.2d at 63, *National By-Products, Inc.,* 292 Ark. at 494, 731 S.W.2d at 196. In order to warrant a submission of the question of punitive damages, there must be an element of willfulness or such reckless conduct on the part of the defendant as is equivalent thereto. *Dalrymple v. Fields,* 276 Ark. 185, 188, 633 S.W.2d 362, 364 (1982)(quoting *Hodges v. Smith,* 175 Ark. 101, 293 S.W.2d 1023 (1927)).

■ When we review an award of punitive damages, we consider the extent and enormity of the wrong, the intent of the party committing the wrong, all the circumstances, and the financial and social condition and standing of the erring party. *United Ins. Co. of Am. v. Murphy,* 331 Ark. 364, 961 S.W.2d 752 (1998). An instruction for punitive damages may be given when there is evidence that a party likely knew or ought to have known, in light of the surrounding circumstances, that his conduct would naturally or probably result in injury, and that he continued such conduct in reckless disregard of the consequences from which malice could be

inferred. *McLaughlin v. Cox,* 324 Ark. 361, 371, 922 S.W.2d 327, 333 (1996) (quoting *Allred v. Demuth,* 319 Ark. 62, 890 S.W.2d 578 (1994)). Whether a vehicle is being operated in such a manner as to amount to wanton or willful conduct in disregard of the rights of others must be determined by the facts and circumstances in each individual case. *Lawrence v. Meux,* 282 Ark. 512, 669 S.W.2d 464 (1984); *Ellis v. Ferguson,* 238 Ark. 776, 385 S.W.2d 154 (1964); *Splawn v. Wright,* 198 Ark. 197, 128 S.W.2d 248 (1939).

Here, the record reflects that Johnson, with twenty years' driving experience, was speeding at the time of the accident and was too close to the Canley vehicle. Johnson received five citations for speeding or defective equipment within five years prior to the accident. The truck involved in the accident had approximately 500,000 miles on it at the time of the accident. Johnson testified that he made daily inspections of the truck and adjustments to the brakes and to the slack adjustor. The company maintained that it had a weekly schedule for maintenance to be performed on its vehicles, usually Fridays and Saturdays, which was performed by the company mechanic. The mechanic, Pancho Hernandez, would have someone record the work performed in a log. The last log entry was August 1, 1999, the day Hernandez left D'Arbonne. The last log entry showing brake work, however, was in 1994.

After the accident, Trooper Fuller discussed with Johnson various problems with the truck. A witness to the accident, Tony Blann, testified that Johnson told bystanders at the scene that he "couldn't hold the truck on the road" and that he "Told 'em to get that fixed. I told 'em, and I told 'em." Blann testified that Johnson further commented that the "walking beam" was the problem with the truck. Another witness, Robert Carter, testified that he was at the scene of the accident and spoke with Johnson, who stated, "I told my boss a couple of weeks ago that something's wrong with this truck, and I don't guess he did anything about it."

At trial, Lewis Elton testified as an expert concerning the mechanical condition of the truck. Elton inspected the truck twice. He inspected all the wheels on the truck and found that one wheel seal was leaking and had been doing so for some time. Elton testified that the No. 2 axle had been "backed off." Elton testified that the truck was in "poor, poor condition," and that he "would not put the truck back on the road like that because it would be dangerous." Elton further opined that the manner in which the brakes were adjusted would cause the truck to pull to the left

because "you were not getting any brake on that wheel." Elton went on to state, "It is my opinion that the condition of the walking beams, the brakes, and everything else I found wrong with the truck has something to do with causing or contributing to the accident. It is my opinion that all of that stuff together caused the truck to pull to the left."

Another expert witness, David Thomas, also testified as an expert log-truck mechanic. Thomas testified, "I do not see how someone operating this truck or watching this truck, or looking at this truck, making weekly inspections or regular inspections, could have not seen this condition that I found on August 22. I would not put a truck on the road in this condition." Thomas attributed the damage on the truck to "poor maintenance by not changing stuff that needs to be changed on something. You must keep that stuff up. You have to spend money to make money." Like Elton, Thomas found that the No. 2 axle had been "backed off," and reasoned, "I do not know why the brake would be backed off, unless the people owning and operating this truck had reason to know that, that the brakes were defective." Thomas testified that, "It is my guess that this brake was backed off to keep it from camming over. That's why I would have backed it off. That's my opinion, and it's not a guess." He stated that the brakes had been intentionally backed off in lieu of proper maintenance.

Appellant relies on *National By-Products, Inc. v. Searcy House Moving Co.,* 292 Ark. 491, 731 S.W.2d 194 (1987), wherein we held that gross negligence will not support an award of punitive damages. In that case, Foley, a driver for National, was late leaving Batesville. The truck weighed 480 pounds over the legal limit. Foley had received six citations in the prior year for driving an overweight truck, and appellant had paid all of the citations. An employee of National testified that the company had a disciplinary procedure for drivers who got an excessive number of overweight tickets. This employee testified that Foley had an excessive number of such tickets but admitted that Foley had not been cautioned or disciplined for driving an overweight truck.

While driving downhill, Foley exceeded the fifty-five-miles-per-hour speed limit and drove his truck extremely close to other vehicles. Foley came around a curve at the crest of a small hill where Searcy House Moving was moving a house north on the same highway. As Foley sped downhill at approximately seventy miles per hour, he ran into the rear of a car and then struck Searcy

House Moving's rig and the house. Foley either did not apply his brakes, or he applied them but they did not function properly. At trial, National's expert brake witness testified that Foley probably did apply his brakes just before the accident but that the brakes were not working properly.

One of National's employees testified that the company policy was to adjust the trailer brakes once a month, but that the brakes on this trailer had not been adjusted for three-and-one-half months and the tractor brakes had not been opened for a complete inspection for almost six months, although the brakes were adjusted about six weeks before the accident. There were also internal inspections of the brakes every 50,000 miles, as recommended by the American Trucking Association and; in addition, the drivers conducted a daily inspection. There was no evidence that National had any knowledge that the brakes were faulty.

In that case, we reversed the award of punitive damages, stating:

> The foregoing facts do not show that appellant, either by its own policies or through the actions of its agent Foley, intentionally acted in such a way that the natural and probable consequence was to damage appellee's property. Nor do the facts show that appellant knew that some act of negligence was about to cause damage, but still continued to cause that damage.

Id. at 495, 731 S.W.2d at 196-197.

However, the facts in the instant case and the facts in *National By-Products* can be distinguished. In the case at hand, the driver himself, Johnson, stated to witnesses after the accident that he had informed D'Arbonne of the dangerous condition of the truck. Therefore, D'Arbonne knew, or should have known, about the truck's poor condition. The jury was presented with testimony from expert witnesses regarding D'Arbonne's failure to maintain its vehicles. The jury was also presented evidence that D'Arbonne knowingly altered the brakes.

In *Potts v. Benjamin,* 882 F.2d 1320 (8th Cir. 1989), the Eighth Circuit Court of Appeals distinguished the facts in that case from *National By-Products,* stating:

> In *National By-Products,* which involved a collision between a tractor-trailer rig driven by an employee of the defendant company

and several other vehicles, the evidence showed that the defendant company had a policy of adjusting the brakes on its trailers once per month and of conducting an internal inspection of the brakes on its tractors every fifty thousand miles. 731 S.W.2d at 196. By contrast, in the case at bar plaintiffs presented evidence from which the jury could find that defendants never inspected the brakes on any of the trucks they sold and that they did not care whether the brakes on the two "piggy-backed" trucks they sold Inturralde were operative or inoperative. There was also evidence from which the jury could find that defendants knowingly rendered the brakes on the two "piggy-backed" trucks inoperative. The jury was entitled to find that in these circumstances defendants knew or ought to have known that their placing the three-truck unit onto an interstate freeway system is conduct that will naturally and probably result in injury when, as happened here, the driver requires maximum braking power in the face of a hazard of the road, and that they nevertheless did so with reckless disregard for the consequences.

*Potts,* 882 F.2d at 1327.

■ Evidence is sufficient to support punitive damages if the party against whom such damages may be assessed, knew or ought to have known, in light of the surrounding circumstances, that the party's conduct would naturally and probably result in injury and that party continued such conduct in reckless disregard of the circumstances from which malice may be inferred. *HCA Health Services of Midwest, Inc. v. National Bank of Commerce,* 294 Ark. 525, 745 S.W.2d 694 (1988).

■ In the case at hand, the jury was instructed on punitive damages due to the direct evidence of the actual physical condition of the logging truck and the expert witnesses's testimony about the condition of the truck that showed appellant had prior knowledge, knew, or should have known about the dangerous condition of the truck. Therefore, we affirm.

Affirmed.